# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

No. 23-1821

TONY G. GONZALEZ,
Petitioner-Appellant

v.

WAYNE T. SALISBURY, JR.
Respondent-Appellee

---

ON APPEAL FROM A JUDGMENT OF THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
DENYING PETITIONER-APPELLANT'S PETITION FOR
WRIT OF HABEAS CORPUS FILED UNDER 28 U.S.C. § 2254

---

BRIEF OF RESPONDENT-APPELLEE WAYNE T. SALISBURY, JR.

Christopher R. Bush, #41229
Assistant Attorney General
Office of the Attorney General
150 South Main Street
Providence, RI  02903
(401) 274-4400

# TABLE OF CONTENTS

Table of Authorities ................................................................................. iii

Statement of Jurisdiction.............................................................................1

Statement of the Issues................................................................................2

Statement of the Case.................................................................................3

I.      Trial & Direct Appeal....................................................................3

II.     Federal Habeas Petition ................................................................4

Statement of Facts.......................................................................................6

Summary of the Argument...........................................................................7

Argument....................................................................................................9

I.      The Rhode Island Supreme Court's Decision Denying Gonzalez's Fair Cross-
        Section Claim is Not Contrary To, And Does Not Constitute An Unreasonable
        Application Of, Clearly Established Federal Law As Determined By the
        United States Supreme Court. ....................................................10

        A.      Applicable Law ................................................................10

        B.      Background .......................................................................11

        C.      The Rhode Island Supreme Court's Decision Denying Gonzalez's Fair
                Cross-Section Claim Is Not "Contrary To" Clearly Established Federal
                Law. ................................................................................16

        D.      The Rhode Island Supreme Court's Decision Denying Gonzalez's Fair
                Cross-Section Claim Does Not Constiute An "Unreasonable
                Application Of" Clearly Established Federal Law. ...........................18

II.     The District Court Correctly Denied Gonzalez's *Brady* Claim As Procedurally
        Defaulted Because The Rhode Island Supreme Court Denied This Claim
        Based On Its "Raise-Or-Waive" Rule. .......................................25

        A.      Background .......................................................................25

B.     Gonzalez Cannot Sustain A Claim For Habeas Relief Under 28 U.S.C. § 2254 Based On The State of Rhode Island's Alleged Violation Of *Brady* Because The State Court Denied This Claim On Independent And Adequate State Law Grounds.....................................................27

Conclusion ............................................................................................33

Certificate of Compliance with Fed. R. App. P. 32 .................................35

Certificate of Service ............................................................................35

# TABLE OF AUTHORITIES

## CASES

*Abrante v. St. Amand*, 595 F.3d 11 (1st Cir.), *cert. denied*, 562 U.S. 869 (2010)...18

*Anderson v. State*, 45 A.3d 594 (R.I. 2012)..............................................................29

*Barber v. Ponte*, 772 F.2d 982 (1st Cir. 1985) (en banc), *cert. denied*, 475 U.S. 1050 (1986) ........................................................................................................................11

*Barksdale v. Lane*, 957 F.2d 379 (7th Cir.), *cert. denied*, 506 U.S. 890 (1992) .....29

*Bebo v. Medeiros*, 906 F.3d 129 (1st Cir. 2018), *cert. denied*, 139 S. Ct. 1203 (2019) ........................................................................................................................17

*Bell v. Cone*, 535 U.S. 685, 122 S. Ct. 1843 (2002)................................................17

*Berghuis v. Smith*, 559 U.S. 314, 130 S. Ct. 1382 (2010) ......................................14

*Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963) ........................................25

*Brown v. Allen*, 344 U.S. 443, 73 S. Ct. 397 (1953)...............................................31

*Burks v. Dubois*, 55 F.3d 712 (1st Cir. 1995) ..........................................................31

*Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546 (1991)........................ 27, 31

*Costa v. Hall*, 673 F.3d 16 (1st Cir. 2012)...............................................................31

*Cronan ex rel. State v. Cronan*, 774 A.2d 866 (R.I. 2001).....................................30

*Duren v. Missouri*, 439 U.S. 357, 99 S. Ct. 664 (1979) ........................ 7, 17, 19, 20

*Field v. Hallett*, 37 F.4th 8 (1st Cir. 2022) ...............................................................6

*Glacken v. Dickhaut*, 585 F.3d 547 (1st Cir. 2009)................................................28

*Gonzalez v. Rhode Island*, 142 S. Ct. 1388 (2022) (mem.) .......................................4

*Gordon v. State*, 18 A.3d 467 (R.I. 2011).................................................................29

*Gunter v. Maloney*, 291 F.3d 74 (1st Cir. 2002)......................................... 28, 31, 33

*Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770 (2011).......................................9

*Hensley v. Roden*, 755 F.3d 724 (1st Cir. 2014), *cert. denied*, 574 U.S. 1086 (2015) ...........................................................................................................................18

*Hodge v. Mendonsa*, 739 F.3d 34 (1st Cir. 2013), *cert. denied*, 572 U.S. 1107 (2014) ...........................................................................................................................28

*Horton v. Allen*, 370 F.3d 75 (1st Cir. 2004), *cert. denied*, 543 U.S. 1093 (2005) ..... ............................................................................................................... 8, 27, 31

*Jewett v. Brady*, 634 F.3d 67 (1st Cir. 2011) ...........................................................6

*Johnson v. Foster*, 786 F.3d 501 (7th Cir. 2015)....................................................29

*Lee v. Corsini*, 777 F.3d 46 (1st Cir. 2015) ...........................................................31

*Lynch v. Ficco*, 438 F.3d 35 (1st Cir.), *cert. denied*, 549 U.S. 892 (2006) ............... ...................................................................................................... 27, 30, 31

*Martinez v. Ryan*, 926 F.3d 1215 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2771 (2020) ...........................................................................................................................29

*Metrish v. Lancaster*, 569 U.S. 351, 133 S. Ct. 1781 (2013) .................................17

*Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639 (1986) .....................................31

*Oakes v. United States*, 400 F.3d 92 (1st Cir. 2005) ..............................................31

*Premo v. Moore*, 562 U.S. 115, 131 S. Ct. 733 (2011) ............................................9

*Sanchez v. Roden*, 753 F.3d 279 (1st Cir. 2014)....................................................10

*Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851 (1995) .............................................31

*Sharpe v. Belli*, 593 F.3d 372 (4th Cir. 2010).......................................................29

*Simpson v. Matesanz*, 175 F.3d 200 (1st Cir. 1999), *cert. denied*, 528 U.S. 1082 (2000) ........................................................................................................31

*State v. Donato*, 592 A.2d 140 (R.I. 1991) ...............................................30

*State v. Florez*, 138 A.3d 789 (R.I. 2016) ................................................30

*State v. Forand*, 958 A.2d 134 (R.I. 2008) ..........................................8, 28

*State v. Gomez*, 848 A.2d 221 (R.I. 2004) ..............................................30

*State v. Gonzalez*, 136 A.3d 1131 (R.I. 2016) ("*Gonzalez I*")...................3

*State v. Gonzalez*, 254 A.3d 813, *cert. denied*, 142 S. Ct. 1388 (2022) ("*Gonzalez II*") ....................................................................................... passim

*State v. Harnois*, 638 A.2d 532 (R.I. 1994) ............................................32

*State v. Merida*, 206 A.3d 687 (R.I. 2019) ................................... 8, 28, 30

*State v. Pacheco*, 763 A.2d 971 (R.I. 2001) ........................................8, 28

*State v. Sosa*, 839 A.2d 519 (R.I. 2003)...................................................17

*State v. Stevens*, 263 A.3d 74 (R.I. 2021) ............................................8, 28

*State v. Tavares*, 312 A.3d 449 (R.I. 2024) ............................................27

*Strickland v. Goguen*, 3 F.4th 45 (1st Cir. 2021)...................................6, 10

*Sweet v. Delo*, 125 F.3d 1144 (8th Cir. 1997), *cert. denied*, 523 U.S. 1010 (1998) ...............................................................................................29

*Taylor v. Louisiana*, 419 U.S. 522, 95 S. Ct. 692 (1975) ........................10

*Tempest v. State*, 141 A.3d 677 (R.I. 2016)............................................29

*United States v. Benjamin*, 252 F.3d 1 (1st Cir. 2001) ...........................10

*United States v. Hafen*, 726 F.2d 21 (1st Cir.), *cert. denied*, 466 U.S. 962 (1984).....................................................................................................11

*United States v. Royal*, 174 F.3d 1 (1st Cir. 1999) ......................... 11, 19

*United States v. Weekes*, 611 F.3d 68 (1st Cir. 2010), *cert. denied*, 564 U.S. 1021 (2011) ....................................................................................................21

*White v. Woodall*, 572 U.S. 415, 134 S. Ct. 1697 (2014)......................................17

*Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495 (2000).....................................17

*Wood v. Hall*, 130 F.3d 373 (9th Cir. 1997), *cert. denied*, 523 U.S. 1129 (1998)..29

*Woods v. Donald*, 575 U.S. 312, 135 S. Ct. 1372 (2015)................................. 17, 19

*Yeboah-Sefah v. Ficco*, 556 F.3d 53 (1st Cir.), *cert. denied*, 558 U.S. 1031 (2009)... ....................................................................................................................6

## UNITED STATES CODE

28 U.S.C. § 1291 ....................................................................................................2

28 U.S.C. § 2253 ....................................................................................................2

28 U.S.C. § 2254 ........................................................................................... passim

## RHODE ISLAND GENERAL LAWS

R.I. Gen. Laws § 11-23-1.........................................................................................3

R.I. Gen. Laws § 11-47-3.2......................................................................................3

R.I. Gen. Laws § 11-5-1............................................................................................3

## OTHER AUTHORITIES

2 Brian R. Means, *Federal Habeas Manual* 47 (2023) ...........................................29

## STATEMENT OF JURISDICTION

This is a direct appeal from the denial of a petition for a writ of habeas corpus that Petitioner-Appellant Tony Gonzalez filed pursuant to 28 U.S.C. § 2254. The United States District Court for the District of Rhode Island entered an order dismissing Gonzalez's habeas petition on July 11, 2023. *See Gonzalez v. Coyne-Fague*, C.A. No. 22-00174-JJM-PAS, Order dated July 11, 2023 (Docket Entry No. 33). The District Court entered judgment in favor of the Respondent on August 10, 2023. *See Gonzalez v. Coyne-Fague*, C.A. No. 22-00174-JJM-PAS, Judgment dated Aug. 10, 2023 (Docket Entry No. 37). The District Court denied a motion for reconsideration that Gonzalez purportedly filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and granted a certificate of appealability with respect to two issues on August 24, 2023. *See Gonzalez v. Coyne-Fague*, C.A. No. 22-00174-JJM-PAS, Text Order dated Aug. 24, 2023.

Gonzalez filed a *pro se* Notice of Appeal in the District Court that the court docketed on October 4, 2023. *See Gonzalez v. Coyne-Fague*, C.A. No. 22-00174-JJM-PAS, Notice of Appeal docketed on Oct. 4, 2023 (Docket Entry No. 38). The Notice of Appeal is dated Monday, September 25, 2023,[1] *see id.*, which is more than thirty days after the District Court entered judgment, but is thirty-two days after the

---

[1] Gonzalez did not include a declaration or notarized statement with his Notice of Appeal and the corresponding envelope is postmarked September 28, 2023.

August 24, 2023, Text Order denying Gonzalez's motion for reconsideration.[2] *See Gonzalez v. Coyne-Fague*, C.A. No. 22-00174-JJM-PAS, Text Order dated Aug. 24, 2023.

This Court has jurisdiction over a timely-filed appeal of a judgment denying a petition for writ of habeas corpus pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 2253 and the Federal Rules of Appellate Procedure.

## STATEMENT OF THE ISSUES

1.     Whether the Rhode Island Supreme Court's decision denying Petitioner-Appellant Tony Gonzalez's fair cross-section claim was contrary to, or constituted an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

2.     Whether the United States District Court correctly held that Petitioner-Appellant Tony Gonzalez's claim that the State of Rhode Island violated his rights under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), was procedurally defaulted because the Rhode Island Supreme Court denied his *Brady* claim based on that court's "raise-or-waive" rule.

---

[2] The thirtieth day following the entry of the order denying Gonzalez's motion to reconsider was Saturday, September 23, 2023.

# STATEMENT OF THE CASE

## I.  Trial & Direct Appeal

On May 22, 2012, a Kent County, Rhode Island, grand jury indicted Petitioner-Appellant Tony Gonzalez for the first degree murder of Carl Cunningham, Jr., *see* R.I. Gen. Laws § 11-23-1, the assault of Matthew Chivers with intent to commit murder, *see* R.I. Gen. Laws § 11-5-1, discharging a firearm while committing a crime of violence (murder), *see* R.I. Gen. Laws § 11-47-3.2, and discharging a firearm while committing a crime of violence (assault with intent to commit murder), *see* R.I. Gen. Laws § 11-47-3.2.  *See State v. Gonzalez*, 136 A.3d 1131, 1145 (R.I. 2016) ("*Gonzalez I*").  A jury found Gonzalez guilty of all counts in 2013 and the Rhode Island Superior Court (Gallo, J.) sentenced him to two consecutive life sentences plus twenty years.  *See id.*  The Rhode Island Supreme Court vacated Gonzalez's convictions in 2016 and remanded his case for a new trial after concluding that the trial court erred in admitting evidence seized following Gonzalez's warrantless arrest.  *See generally id.* at 1145-59.

Following a second trial in October 2017, a jury found Gonzalez guilty of all charges.  *See State v. Gonzalez*, 254 A.3d 813, 816-17, *cert. denied*, 142 S. Ct. 1388 (2022) ("*Gonzalez II*") (Addendum at 1 ("ADD.")); Habeas Petition at 1.  On March 9, 2018, the Superior Court (Procaccini, J.) sentenced Gonzalez to consecutive life sentences for murder and discharging a firearm while committing murder and

consecutive sentences of twenty years to serve for assault with intent to commit murder and ten years to serve for discharging a firearm while committing assault with intent to murder.  *See Gonzalez II*, 254 A.3d at 816-17.  The Rhode Island Supreme Court affirmed Gonzalez's convictions in July 2021, *see Gonzalez II*, 254 A.3d 813, and denied Gonzalez's petition for reargument two months later.

The United States Supreme Court denied Gonzalez's petition for issuance of a writ of certiorari in March 2022.  *See Gonzalez v. Rhode Island*, 142 S. Ct. 1388 (2022) (mem.).

## II.   Federal Habeas Petition

Gonzalez filed a petition for issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of Rhode Island on April 22, 2022.  *See Gonzalez v. Coyne-Fague*, No. 1:22-cv-00174-JJM-PAS, Docket Entry No. 1 (ADD. 14).  On August 19, the District Court granted the Respondent's motion to dismiss that petition.  *See* Order dated Aug. 19, 2022 (Docket Entry No. 19).

Less than a month later, on September 9, 2022, the District Court granted Gonzalez's motion to file an amended habeas petition.  *See* Text Order dated Sept. 9, 2022 (ADD. 16).  Gonzalez filed an amended habeas petition three days later in which he essentially identified four grounds for habeas relief and claimed that:

1. The Rhode Island Supreme Court erred in denying his fair cross-section challenge to the jury venire.

2. The Rhode Island Superior Court erred in denying Gonzalez's claim that the Warwick Police Department violated his Fourth Amendment rights by "covertly" accessing his cell phone without a warrant.

3. The State of Rhode Island ("State") violated its obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), by withholding a recording of a controlled phone call between Gonzalez and his brother.

4. The Rhode Island Superior Court erred in denying Gonzalez's motion for a mistrial based on what he claims was "perjurious and prejudicial testimony" of a witness at trial.

*See* Petitioner's Amended Complaint dated Sept. 12, 2022, at 1-2 ("Amended Complaint") (Docket Entry No. 22).

The District Court granted Respondent's motion to dismiss Gonzalez's amended habeas petition on July 11, 2023, *see* Order dated July 11, 2023 (Docket Entry No. 33) (ADD. 18) ("Order"), and denied Gonzalez's motion for reconsideration the following week, *see* Text Order dated Aug. 24, 2023 (ADD. 17). The District Court granted Gonzalez's motion for a certificate of appealability "to

allow review of the issue surrounding the jury venire and alleged Brady violation."

Text Order dated Aug. 24, 2023 (ADD. 17).

## STATEMENT OF FACTS

"In scrutinizing a state conviction on habeas review pursuant to" the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this Court accepts the state court's factual findings. *Strickland v. Goguen*, 3 F.4th 45, 47 (1st Cir. 2021); *see also Jewett v. Brady*, 634 F.3d 67, 70 (1st Cir. 2011). The following is a summary of the facts giving rise to Gonzalez's murder, assault, and firearms convictions taken from the Rhode Island Supreme Court's 2021 opinion affirming those convictions, *see generally Gonzalez II*, 254 A.3d at 815-17. *See Field v. Hallett*, 37 F.4th 8, 12 (1st Cir. 2022) ("We take the facts largely as recounted by the [SJC] decision affirming [Field's] conviction, 'supplemented with other record facts consistent with the SJC's findings.'") (quoting *Yeboah-Sefah v. Ficco*, 556 F.3d 53, 62 (1st Cir.), *cert. denied*, 558 U.S. 1031 (2009)).

> Saturday, January 21, 2012, was a snowy winter day that began with the breakup of [Gonzalez] and his 'on and off' girlfriend, Patricia Delomba. Sadly, the day ended in senseless violence and tragedy for Ms. Delomba, her new boyfriend Matthew Chivers, and their mutual friend, Carl Cunningham.
>
> In the evening, hours after Ms. Delomba ended her longtime hectic relationship with [Gonzalez], [Gonzalez] traded multiple phone calls with Mr. Chivers about meeting up for a fight. Mr. Gonzalez also communicated with Ms. Delomba; she told him via text message not to come to her house, but he responded that

he was coming over. He also indicated that 'the ACI was going to be his new home.'

At 11:43 p.m., Ms. Delomba received a text message from [Gonzalez] stating that he was on his way to her house. Shortly thereafter, Mr. Gonzalez arrived at the house and began banging on the door. When Ms. Delomba opened the door, Mr. Gonzalez said that he wanted to fight Mr. Chivers. Ms. Delomba told [Gonzalez] to leave, and she slammed the door closed. However, [Gonzalez] entered the house and pushed his way into the bedroom, where he found Ms. Delomba, Mr. Chivers, and Mr. Cunningham. [Gonzalez], with a gun in hand, stated, 'I got something for you.' Mr. Chivers and Mr. Cunningham both attempted to take cover in the bedroom closet, but [Gonzalez] fired bullets toward the closet until he exhausted his supply of ammunition, fatally wounding Mr. Cunningham. The defendant then fled the scene. Within minutes, Mr. Chivers and Ms. Delomba contacted 911 to report the shooting.

*Gonzalez II*, 254 A.3d at 815-17 (footnote omitted).

## SUMMARY OF THE ARGUMENT

The District Court correctly denied Gonzalez's habeas petition because the Rhode Island Supreme Court's decision denying his fair cross-section claim is not contrary to, and does not constitute an unreasonable application of, clearly established federal law. The state court's decision is not "contrary to" clearly established federal law because the court analyzed Gonzalez's fair cross-section claim in accordance with the Supreme Court's decision in *Duren v. Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664 (1979). *See Gonzalez II*, 254 A.3d at 818-20. The state court's decision does not constitute an "unreasonable application of" clearly

established federal law because Gonzalez failed to present any evidence to support his fair cross-section claim. *See Gonzalez II*, 254 A.3d at 819-20.

The District Court correctly denied Gonzalez's habeas petition because the Rhode Island Supreme Court denied Gonzalez's claim that the State violated its *Brady* obligations based on the independent and adequate state law or procedural default doctrine. *See* Order at 5-6. The state court denied Gonzalez's *Brady* claim under its "well-settled raise-or-waive rule" because Gonzalez failed to raise that issue at trial and therefore did not preserve the issue for review on appeal. *Gonzalez II*, 254 A.3d at 821-22. Since the Rhode Island Supreme Court regularly and consistently applies its "raise-or-waive" rule to preclude review of issues raised for the first time on appeal, *see*, *e.g.*, *State v. Stevens*, 263 A.3d 74, 76-77 (R.I. 2021); *State v. Merida*, 206 A.3d 687, 692-93 (R.I. 2019); *State v. Forand*, 958 A.2d 134, 141 (R.I. 2008); *State v. Pacheco*, 763 A.2d 971, 976 (R.I. 2001), its decision denying Gonzalez's *Brady* claim qualifies as an independent and adequate state law ground for decision that precludes habeas relief under § 2254. *See Horton v. Allen*, 370 F.3d 75, 80-81 (1st Cir. 2004), *cert. denied*, 543 U.S. 1093 (2005).

# ARGUMENT

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"As amended by [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")], § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770 (2011). It preserves authority to issue the writ only in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with the United States Supreme Court's precedents. *See id.* "AEDPA prohibits federal habeas relief for any claim adjudicated on the merits in state court, unless one of the exceptions listed in § 2254(d) obtains." *Premo v. Moore*, 562 U.S. 115, 121, 131 S. Ct. 733 (2011).

This Court's review of a district court's denial of a § 2254 habeas petition is *de novo*. *See Sanchez v. Roden*, 753 F.3d 279, 293 (1st Cir. 2014). As noted above, when reviewing a state conviction under AEDPA, this Court accepts the state court's factual findings. *See Strickland*, 3 F.4th at 47.

I.  **The Rhode Island Supreme Court's Decision Denying Gonzalez's Fair Cross-Section Claim is Not Contrary To, And Does Not Constitute An Unreasonable Application Of, Clearly Established Federal Law As Determined By the United States Supreme Court.**

This Court should affirm the District Court's denial of Gonzalez's fair cross-section claim because the Rhode Island Supreme Court's decision denying that claim is not contrary to, and does not constitute an unreasonable application of, clearly established federal law. The state court correctly analyzed Gonzalez's claim under the United States Supreme Court's decision in *Duren* and did not unreasonably apply that case when it denied the claim.

A.  **Applicable Law**

"'[T]he American concept of the jury trial contemplates a jury drawn from a fair cross section of the community.'" *United States v. Benjamin*, 252 F.3d 1, 12 (1st Cir. 2001) (quoting *Taylor v. Louisiana*, 419 U.S. 522, 527, 95 S. Ct. 692 (1975)). "This requirement is fundamental to the right to jury trial guaranteed by the Sixth Amendment." *Id.* The "fair cross-section requirement" "does not guarantee that juries be 'of any particular composition,' or that 'venires . . . [be] a substantially true mirror of the community.'" *United States v. Royal*, 174 F.3d 1, 6

(1st Cir. 1999) (quoting *Taylor*, 419 U.S. at 538; *Barber v. Ponte*, 772 F.2d 982, 997 (1st Cir. 1985) (en banc), *cert. denied*, 475 U.S. 1050 (1986)) (citations omitted). All that the Sixth Amendment requires is that "'the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.'" *Id.* (quoting *Taylor*, 419 U.S. at 538).

In order to make a prima facie case of a fair cross-section claim, a defendant must establish:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.* (quoting *Duren v. Missouri*, 439 U.S. at 364, *quoted in United States v. Hafen*, 726 F.2d 21, 23 (1st Cir.), *cert. denied*, 466 U.S. 962 (1984)) (some internal quotation marks omitted).

### B.    Background

Gonzalez first raised the fair cross-section issue in state court the day before jury selection for his second trial commenced, when he moved for a change of venue. *See Gonzalez II*, 254 A.3d at 818.  Gonzalez specifically asked to have this case transferred from Kent County to Providence County for two reasons:  (1) the media coverage surrounding Gonzalez's trial; and (2) because the defendant was Hispanic

and census data indicated "'that a mere 3 to 4.6 percent of the population of Kent County . . . is Hispanic or Latino and only 1.9 percent of said population is of two or more races.'" *Gonzalez II*, 254 A.3d at 818.

At a hearing three days later, defense counsel asserted that a trial in Kent County would violate the fair cross-section requirement of the Sixth Amendment, but conceded that he could not demonstrate a prima facie fair cross-section violation because he did not have any evidence "to suggest that Hispanic individuals were systematically excluded from the jury selection process in this case." *Id.* The Superior Court denied Gonzalez's motion. *See id.*

Defense counsel again challenged the makeup of the jury at sidebar almost immediately after the jury was impaneled on October 12, 2017. *See id.*

> He moved to discharge the jury pursuant to the Sixth Amendment to the United States Constitution, referencing his pretrial argument, and he stated that '[t]here were no Hispanics in the jury pool that I was able to determine.' Counsel also renewed his motion to change the venue of [Gonzalez's] trial to Providence County, asserting that Providence County has a Hispanic population that is significantly greater than the Hispanic population of Kent County.

*Id.* The trial court "accepted counsel's assertions regarding the makeup of the Hispanic population in Providence County as true," but denied Gonzalez's motion because he had not shown any actual prejudice resulting from a lack of Hispanic jurors. *Id.*

The Superior Court addressed the jury issue a third time the following day at the request of the defendant, who had not participated in the sidebar discussion the previous day, and gave Gonzalez the opportunity to address the court directly. *Id.* The court reviewed the travel of the motion and read a transcript of the decision that he gave at sidebar to the defendant.[3] Transcript dated Oct. 12 & 13, 2017, at 352-55.

Gonzalez raised the fair cross-section issue on direct appeal. The Rhode Island Supreme Court denied his claim after determining that Gonzalez failed to establish a prima facie violation of the fair cross-section requirement at trial for two reasons.

First, the court held that Gonzalez failed to satisfy the second prong of *Duren*, which requires a defendant to provide evidence indicating that the representation of a distinctive group in the community in a jury venire is not fair and reasonable relative to the number of such persons in the community. *See Gonzalez II*, 254 A.3d at 819-20. The Court observed that, even accepting defense counsel's representations regarding census data for Kent County as accurate, "counsel's

---

[3] During this colloquy, the trial justice made certain statements that were intended to assure Gonzalez that he would receive a fair trial, which the Rhode Island Supreme Court described as "unfortunate." *Gonzalez II*, 254 A.3d at 819 n.2.

observation that there did not appear to be any Hispanic jurors in the pool was not sufficient" to satisfy *Duren*.  *Id.* at 820.

> Even accepting the census data for Kent County as accurate, counsel's observation that there did not appear to be any Hispanic jurors in the pool was not sufficient.  Rather, to meet the second prong under *Duren*, defendant was required to introduce competent evidence—data— regarding the makeup of the venire from which his jury was selected. *See United States v. Royal*, 174 F.3d 1, 6-7 (1st Cir. 1999) (explaining that the absolute disparity test 'measures the difference between the percentage of members of the distinctive group in the relevant population and the percentage of group members on the jury wheel'). Without such data or an appropriate statistical analysis of that data to indicate disparity, the trial justice could not properly assess defendant's challenge to the array.

*Gonzalez II*, 254 A.3d at 820.

Second, the Supreme Court held that Gonzalez failed to satisfy the third prong of *Duren* because he failed to provide any evidence that any under-representation of Hispanic jurors was caused by a systemic exclusion of Hispanic individuals in the jury selection process.  *See id.*

> Moreover, it was also defendant's burden to introduce evidence establishing that an under-representation of Hispanic jurors in Kent County was caused by a systemic exclusion of Hispanic individuals in the jury selection process.  *See Berghuis v. Smith*, 559 U.S. 314, 332, 130 S. Ct. 1382 (2010) (holding that systematic exclusion cannot be established 'merely by pointing to a host of factors that, individually or in combination, *might* contribute to a group's underrepresentation.').

*Gonzalez II*, 254 A.3d at 820 (internal parallel citation omitted).

Gonzalez raised a fair cross-section claim in both his original § 2254 habeas petition and his amended § 2254 habeas petition.  In his amended habeas petition,

Gonzalez claimed that the Rhode Island Supreme Court's decision denying his fair cross-section claim was "flawed" because he "was not afforded a meaningful opportunity to present a *Duren* challenge to the venire from which the jury for his second trial was selected," Petitioner's Response To Respondent's Motion To Dismiss at 1-2 (Docket Entry No. 30); *see also id.* at 2-3 (". . . Petitioner was never given an opportunity to gather, analyze and present" evidence in support of his fair cross-section claim); Amended Complaint. Gonzalez asserted that the Rhode Island Supreme Court's holding that he had to present evidence to support his fair cross-section claim constituted an unreasonable application of clearly established federal law. *See* Petitioner's Response To Respondent's Motion To Dismiss at 3 (Docket Entry No. 30).

> [C]ompliance with the appellate court's requirements is a necessary undertaking if a defendant seeks to protect his right to assert a *Duren* challenge, even though he will not know if such a challenge is necessary until empanelment is undertaken. The foregoing constitutes an unreasonable application by the state court of clearly established federal law by imposing such prohibitive requirements on the exercise of the constitutional right to a jury selected from a fair cross-section of the community. Surely, a continuance of a day or two after empanelment but before the petit jury is sworn in would not be unduly burdensome on the court or the parties, but would be sufficient to protect the constitutional right to a jury from a fair cross-section of the community, i.e., the defendant would be able to collect and analyze the data, and present it in a timely manner to the court.

*Id.*

The District Court denied Gonzalez's fair cross-section claim for two reasons. First, the court denied Gonzalez's claim that the Rhode Island Supreme Court's decision was not "contrary to" clearly established federal law because that court "correctly identified the governing legal principle from current United States Supreme Court precedent," specifically, *Duren v. Missouri*. Order at 4-5. Second, the District Court denied Gonzalez's claim that the state court unreasonably applied clearly established federal law by holding that Gonzalez had an obligation to present evidence in support of his fair cross-section claim because Gonzalez did not exhaust his state court remedies with respect to that claim. *See* Order at 5.

> Mr. Gonzalez argues that the state court's interpretation of *Duren* was unreasonable because it 'requires a prohibitively burdensome effort by defense counsel in any criminal case to address a potential issue which may or may not arise[.]' ECF No. 30 at 3. However, if Mr. Gonzalez believed the composition of his jury venire violated his rights, he should have raised it at the time of jury selection. As noted above, the AEDPA requires that petitioners exhaust all available legal remedies and raise all arguments for relief at the state level before they seek habeas review from federal courts. Since Mr. Gonzalez did not seek a continuance to build a factual record for a *Duren* challenge or argue in state court that this alleged violation entitled him to relief, this Court DENIES habeas review on this basis.

Order at 5.

### C. The Rhode Island Supreme Court's Decision Denying Gonzalez's Fair Cross-Section Claim Is Not "Contrary To" Clearly Established Federal Law.

On appeal, Gonzalez does not seem to assert that the Rhode Island Supreme Court's decision denying his fair cross-section claim is "contrary to" clearly

established federal law. *See generally* Gonzalez's Brief at 5-11. Even if he does, Gonzalez cannot sustain such a claim.

A state court determination is "contrary to"' clearly established law if the state court either employs a test or rule of law that directly contradicts existing United States Supreme Court precedent or reaches a different result on materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843 (2002); *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495 (2000); *Bebo v. Medeiros*, 906 F.3d 129, 134 (1st Cir. 2018), *cert. denied*, 139 S. Ct. 1203 (2019). For purposes of section 2254(d)(1), "clearly established Federal law" encompasses only the holdings, as opposed to the dicta, of United States Supreme Court decisions. *See White v. Woodall*, 572 U.S. 415, 419, 134 S. Ct. 1697 (2014). This "standard is intentionally difficult to meet," *Donald*, 575 U.S. at 316 (quoting *Woodall*, 572 U.S. at 419; *Metrish v. Lancaster*, 569 U.S. 351, 357-58, 133 S. Ct. 1781 (2013)) (internal quotation marks omitted).

Gonzalez cannot establish that the Rhode Island Supreme Court reviewed his fair cross-section claim using a test or rule of law that was inconsistent with United States Supreme Court precedent. The state court analyzed Gonzalez's claim under *Duren v. Missouri*, which constitutes "clearly established Federal law" on the issue of a fair cross-section challenge. *See Gonzalez II*, 254 A.3d at 820 (citing *State v. Sosa*, 839 A.2d 519, 528 (R.I. 2003) (citing and applying *Duren*, 439 U.S. at 364)).

And this is why the District Court, referring to the portion of *Gonzalez II* in which the state court cited *Duren*, found that the state court "correctly identified the governing legal principle from current United States Supreme Court precedent . . . ." Order at 4-5. Again, Gonzalez does not take issue with the District Court's holding in his brief.

### D. The Rhode Island Supreme Court's Decision Denying Gonzalez's Fair Cross-Section Claim Does Not Constitute An "Unreasonable Application Of" Clearly Established Federal Law.

Gonzalez asserts that the Rhode Island Supreme Court's decision denying his fair cross-section claim "is based upon an unreasonable application of" *Duren v. Missouri*. Gonzalez's Brief at 8. Gonzalez cannot sustain such a claim.

> [A] state court adjudication constitutes an unreasonable application 'if the state court identifies the correct governing legal principle from the Supreme Court's then-current decisions but unreasonably applies that principle to the facts of the prisoner's case.' *Abrante v. St. Amand*, 595 F.3d 11, 15 (1st Cir. 2010) (internal quotation marks omitted). An "*unreasonable* application of federal law is different from an *incorrect* application of federal law,'" and a state court is afforded deference and latitude. *Harrington v. Richter*, [562 U.S. 86, 101], 131 S. Ct. 770, 785 (2011) (quoting [*Williams v. Taylor*, 529 U.S. 362, 410, 120 S. Ct. 1495 (2000)]).

*Hensley v. Roden*, 755 F.3d 724, 731 (1st Cir. 2014), *cert. denied*, 574 U.S. 1086 (2015) (internal parallel citation omitted). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods v. Donald*, 575 U.S. 312, 316, 135 S. Ct. 1372 (2015).

The Rhode Island Supreme Court based its denial of Gonzalez's fair cross-section claim on the fact that Gonzalez failed to present any evidence to satisfy the second and third prongs of *Duren*:

> This Court takes seriously any alleged violation of the fair cross-section requirement. When presented with a challenge to the array of a jury, it is critically important that the trial justice undertakes the appropriate analysis under *Duren* and addresses the motion to discharge the jury accordingly. Our careful review of the record in this case reveals that the trial justice repeatedly and explicitly denied the motion to change venue, but that he did not specifically address the motion to discharge the jury, despite defendant's expressed concerns about the jury makeup.

> However, it is also clear from the record that defendant failed to establish a prima facie violation of the fair cross-section requirement. Although there is no dispute that defendant is Hispanic and thus a member of a distinctive community, it was defendant's burden to provide evidence that indicates that the representation of Hispanic individuals in the 'venire[ ] from which [his jury was] selected is not fair and reasonable in relation to the number of such persons in the community[.]' [*State v. Sosa*, 839 A.2d 519, 528 (R.I. 2003)] (quoting *Duren*, 439 U.S. at 364, 99 S. Ct. 664). Even accepting the census data for Kent County as accurate, counsel's observation that there did not appear to be any Hispanic jurors in the pool was not sufficient. Rather, to meet the second prong under *Duren*, defendant was required to introduce competent evidence—data—regarding the makeup of the venire from which his jury was selected. *See* [*Royal*, 174 F.3d at 6-7] (explaining that the absolute disparity test 'measures the difference between the percentage of members of the distinctive group in the relevant population and the percentage of group members on the jury wheel'). Without such data, or an appropriate statistical analysis of that data to indicate disparity, the trial justice could not properly assess defendant's challenge to the array.

> Moreover, it was also defendant's burden to introduce evidence establishing that any under-representation of Hispanic jurors in Kent County was caused by a systemic exclusion of Hispanic individuals in the jury selection process. *See Berghuis v. Smith*, 559 U.S. 314, 332, 130 S. Ct. 1382 (2010) (holding that systematic exclusion cannot be established 'merely by pointing to a host of factors that, individually or in combination, *might* contribute to a group's underrepresentation').
>
> We therefore conclude that there is no evidence in the record to support defendant's claim that the trial justice erred when he did not discharge the jury impaneled on October 12, 2017.

*Gonzalez II*, 254 A.3d at 819-20.

The state court did not unreasonably apply the Supreme Court's decision in *Duren* in denying Gonzalez's claim. In *Duren*, the Supreme Court held that the defendant satisfied the second prong of the prima facie case by showing that a distinctive group—women—was not fairly represented in the jury venire based on a statistical presentation. *See Duren*, 439 U.S. at 364. The defendant did so by showing that, according to census data, 54% of the adult population were women, while only 14.5% of the jury venires when his jury was selected were women. *See id.* at 362-64.

Gonzalez offered no such statistical analysis or evidence in this case. Even assuming, as the state court did, *see Gonzalez II*, 254 A.3d at 820, that the data that Gonzalez provided regarding the Hispanic populations in Kent and Providence Counties was accurate, Gonzalez failed to provide any evidence regarding the representation of Hispanic individuals in the jury venire from which his jury was

selected. *See id.* at 819-20. Defense counsel instead simply stated, "'[t]here were no Hispanics in the jury pool that I was able to determine,'" when moving to discharge the jury. *Id.* at 818. Nothing in *Duren* or in any other case in which the United States Supreme Court addressed a fair cross-section claim supports the conclusion that defense counsel's observations and conclusions regarding the makeup of a jury venire are sufficient to establish a prima face case of a Sixth Amendment violation.

The state court also did not unreasonably apply clearly established federal law in concluding that Gonzalez failed to satisfy the third prong of *Duren*. Once again, Gonzalez does not suggest that he established that any underrepresentation of Hispanics in the jury venire was due to the systemic exclusion of the group in the jury selection process. *See Gonzalez II*, 254 A.3d at 819-20.

The Rhode Island Supreme Court's holding is consistent with how this Court interpreted *Duren* in *United States v. Weekes*, 611 F.3d 68, 70 (1st Cir. 2010), *cert. denied*, 564 U.S. 1021 (2011). In *Weekes*, this Court held that the district court properly denied a fair cross-section claim based, at least in part, on defense counsel's observation that there did not appear to be any African-Americans in the jury venire. *Id.*

> To make out a prima facie violation of the fair-cross-section requirement, a defendant must show, among other things, that the alleged 'underrepresentation is due to systematic exclusion of the group in the jury-selection process.' Weekes's evidence on this point, simply

his lawyer's observation that there were apparently no African-Americans in the venire, plainly did not suffice to demonstrate the requisite systematic effort, and the district court properly rejected the claim.

*Id.* (internal citation omitted).

On appeal, Gonzalez does not suggest that defense counsel's subjective belief regarding the composition of a jury venire is sufficient to satisfy the second prong of *Duren* or that he did, in fact, introduce evidence of a systematic exclusion of a distinctive group of jurors.[4]  To the contrary, Gonzalez acknowledges that he did not provide the information necessary to satisfy the requirements of *Duren* in the trial court.  *See* Gonzalez's Brief at 7 (defense counsel failed "to provide [the] appropriate statistical analysis in support of the request to discharge the jury"), 8 (alleging Due Process violation "when the proper analysis required ([a]s in [*Duren*]) was not provided to the Court"), 9 (recognizing and accepting defense counsel's failure with respect to fair cross-section motion).

Gonzalez instead believes that the trial justice violated his Due Process rights by precluding him from establishing a prima facie case of a fair cross-section violation.  *See* Gonzalez's Brief at 7 (trial court denied his due process rights "by precluding the Appellant from sufficiently developing" his fair cross-section claim);

---

[4] In his brief, Gonzalez states that he identified a second distinctive group when he addressed the trial court with respect to the fair cross-section motion.  *See* Gonzalez's Brief at 6-7.  However, Gonzalez did not provide any evidence to satisfy the second or third prongs of *Duren* with respect to that group.

10 ("... the appellant states he was precluded from" making a prima facie showing).

Gonzalez recognizes that defense counsel failed to present the evidence necessary to establish a prima facie fair cross-section claim. *See* Gonzalez's Brief at 7, 9. He nevertheless asserts that the trial court violated his Due Process rights by not advising Gonzalez that he should consult with his attorney about how to obtain the information necessary to sustain a fair cross-section claim and/or to ask for a continuance "to obtain statistical data . . . ." *Id.* Gonzalez does not cite any authority to support his claim that the trial court had a duty to advise him how to pursue a fair cross-section claim or that it should have granted a continuance to allow him to do so *sua sponte*. *See generally id.* at 5-11.

This Court should deny this relatively newly-minted claim for at least two reasons.

First, the District Court correctly concluded that Gonzalez had not exhausted his state court remedies with respect to this claim in accordance with 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). Gonzalez does not and cannot dispute the District Court's finding that he "did not seek a continuance to build a factual record for a *Duren* challenge or argue in state court that this alleged violation entitled him to relief . . . ." Order

at 5.  Moreover, Gonzalez did not raise this issue on direct appeal to the Rhode Island Supreme Court, but instead claimed that the trial court misconstrued and insufficiently addressed his *Duren* claim.  *See* State's Rule 5 Appendix dated July 18, 2022, at Ex. 1, pp. 1-5 (Docket Entry No. 13-1, pp. 9-13).

Second, although Gonzalez suggests a procedure by which the trial court "should have" addressed his fair cross-section claim, he fails to cite any facts to support a claim that the state court actually precluded him from doing so.  *See* Amended Petition at 5-7.

Finally, even if Gonzalez had exhausted his state court remedies with respect to his Due Process claim, he would not be able to sustain such a claim on appeal. Gonzalez fails to cite a Supreme Court case in which the Court held that a trial court had to advise a defendant about how to litigate a fair cross-section claim.  Nor does he cite a case holding that a trial court has an affirmative obligation to continue a criminal case to allow a defendant to marshal the information necessary to litigate a fair cross-section claim.

For these reasons, this Court should deny Gonzalez's claim that the Rhode Island Supreme Court's denial of his fair cross-section claim was contrary to, or constituted an unreasonable application of, clearly established federal as determined by the United States Supreme Court.

**II.    The District Court Correctly Denied Gonzalez's *Brady* Claim As Procedurally Defaulted Because The Rhode Island Supreme Court Denied This Claim Based On Its "Raise-Or-Waive" Rule.**

The second issue that Gonzalez raises relates to the recording of a controlled phone call that Gonzalez's brother made to Gonzalez prior to his arrest.  *See generally* Gonzalez's Brief at 11-16.  Gonzalez asserts—erroneously—that the State violated *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), by not providing him with a copy of the recording prior to his state court trial.  *See* Gonzalez's Brief at 11-16.  The District Court correctly denied this claim based on the independent and adequate state law or procedural default doctrine.  *See* Order at 5-6.

**A.    Background**

As part of the Warwick Police Department's efforts to locate Gonzalez in the early morning of January 22, hours after Gonzalez fatally shot Carl Cunningham, the police responded to the home of Juan Zachary Garcia, Gonzalez's brother, and woke him up.  Tr. III at 617-18; Tr. IV at 1081-82; Tr. V at 1200.  The police transported Garcia to the Warwick police station, where he gave a statement and the police asked him to call Gonzalez.  Tr. IV at 1082-83.  Garcia agreed and placed a call to Gonzalez, which the police recorded.  Tr. I at 42; Tr. IV at 1083.  Based on the call, and Garcia's cooperation, the police were able to identify Gonzalez's location and apprehended him there later that morning.  Tr. V at 1200; *see also Gonzalez II*, 254 A.3d at 816.

Gonzalez's attorney referenced the phone call during his opening statement, seemingly to show a lack of flight by Gonzalez. Tr. II at 377-78; Gonzalez's Brief at 12. The recording was not introduced into evidence and no testimony as to the substance of the phone call was elicited.

Gonzalez claimed that the State failed to provide a copy of the recording of the phone call, in violation of its obligations under *Brady*, for the first time on direct appeal to the Rhode Island Supreme Court. That court quickly denied the claim because Gonzalez had not raised the claim in the trial court and therefore did not preserve the issue for appellate review under the Rhode Island Supreme Court's "well-settled raise-or-waive rule." *Gonzalez II*, 254 A.3d at 821-22.

Gonzalez raised the same *Brady* claim in his amended § 2254 habeas petition. *See* Amended Petition at 13-17. Gonzalez asserted that the state court erred in denying this claim based on its "raise-or-waive" rule because it should have invoked an exception to its rule and allowed Gonzalez to litigate the *Brady* claim on direct appeal. *See* Amended Petition at 14-15. Gonzalez specifically asserted that the state court should have invoked the exception because he raised the issue "to the best ability that a [*pro se*] could do . . ." and because "he was not completely aware of the disc being deliberately removed from evidence." Amended Petition at 14-15. The District Court denied Gonzalez's claim because he "did not raise and litigate the argument that he qualified for an exception to the raise-or-waive rule" in state court

and therefore did not exhaust his state court remedies with respect to that ground for relief.  Order at 6.

**B.    Gonzalez Cannot Sustain A Claim For Habeas Relief Under 28 U.S.C. § 2254 Based On The State of Rhode Island's Alleged Violation Of *Brady* Because The State Court Denied This Claim On Independent And Adequate State Law Grounds.**

This Court should deny Gonzalez's *Brady* claim based on the independent and adequate state law or procedural default doctrine.  It is well settled that

> '[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'

*Lynch v. Ficco*, 438 F.3d 35, 45 (1st Cir.), *cert. denied*, 549 U.S. 892 (2006) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546 (1991)).  "A state court's decision to find a forfeiture, based on the defendant's failure to object at trial, is an independent and adequate ground for decision so long as the state court consistently applies its contemporaneous objection rule and has not waived it in the particular case by basing the decision on some other ground."  *Horton*, 370 F.3d at 80-81.

The Rhode Island Supreme Court's "raise-or-waive" rule constitutes "an independent and adequate state procedural rule" that precludes federal habeas review of a claim.  The court "staunchly adheres" to the "raise-or-waive" rule, *State v. Tavares*, 312 A.3d 449, 458 (R.I. 2024), and has regularly and consistently applied

the rule to preclude review of issues raised for the first time on appeal. *See*, *e.g.*, *Stevens*, 263 A.3d at 76-77; *Merida*, 206 A.3d at 692-93; *Forand*, 958 A.2d at 141; *Pacheco*, 763 A.2d at 976. Nothing in the court's decision denying Gonzalez's direct appeal suggests that it waived application of the rule in his case. *See Gonzalez II*, 254 A.3d at 821-22. This Court has held that preservation rules similar to the Rhode Island Supreme Court's "raise-or-waive" rule constituted independent and adequate state procedural rules that precluded federal habeas review of a claim. *See*, *e.g.*, *Hodge v. Mendonsa*, 739 F.3d 34, 43-45 (1st Cir. 2013), *cert. denied*, 572 U.S. 1107 (2014); *Glacken v. Dickhaut*, 585 F.3d 547, 550-51 (1st Cir. 2009); *Gunter v. Maloney*, 291 F.3d 74, 78-81 (1st Cir. 2002).

Gonzalez does not dispute that, as a general matter, the Rhode Island Supreme Court's "raise-or-waive" rule qualifies as an independent and adequate state procedural rule that would preclude federal habeas review. *See generally* Gonzalez's Brief at 11-15. He instead argues that the Rhode Island Supreme Court should have invoked an exception to its "raise-or-waive" rule and allowed him to litigate his *Brady* claim on direct appeal because "he was not aware of the CD/Recording being deliberately removed from Discovery." Gonzalez's Brief at 11-12.

The District Court rejected this claim because it correctly determined that Gonzalez never argued in state court that the exception to the "raise-or-waive"

applied and that Gonzalez therefore failed to exhaust his state court remedies on that point. *See* Order at 6. In any event, Gonzalez's claim that the state court misapplied its own procedural rule is not sufficient to excuse a procedural default, as "[f]ederal courts generally will not consider whether the state court properly applied its default rule to the petitioner's facts." 2 Brian R. Means*, Federal Habeas Manual* 47 (2023) (citing *Martinez v. Ryan*, 926 F.3d 1215, 1224 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2771 (2020); *Johnson v. Foster*, 786 F.3d 501, 508 (7th Cir. 2015); *Sharpe v. Belli*, 593 F.3d 372, 377 (4th Cir. 2010); *Wood v. Hall*, 130 F.3d 373, 378-79 (9th Cir. 1997), *cert. denied*, 523 U.S. 1129 (1998); *Sweet v. Delo*, 125 F.3d 1144, 1151 (8th Cir. 1997), *cert. denied*, 523 U.S. 1010 (1998); *Barksdale v. Lane*, 957 F.2d 379, 383 (7th Cir.), *cert. denied*, 506 U.S. 890 (1992)). For this reason, Gonzalez's suggestion that the District Court erred in not affording him an evidentiary hearing to establish that the state court should have invoked the exception to the "raise-or-waive" rule, *see* Gonzalez's Brief at 14-15, misses wide of the mark.[5]

---

[5] The Respondent notes that Gonzalez's failure to raise the *Brady* claim at trial only precluded him from raising the issue for the first time on direct appeal; it does not mean that he is forever barred from raising that issue in state court. There would seemingly be nothing to preclude Gonzalez from raising this claim in a state post-conviction relief application, although the Respondent disputes that such a claim would have merit. *See*, *e.g.*, *Tempest v. State*, 141 A.3d 677 (R.I. 2016); *Anderson v. State*, 45 A.3d 594 (R.I. 2012).

This is not to say that the Rhode Island Supreme Court erred in not invoking the exception to the "raise-or-waive" rule. Although Gonzalez suggests that the exception broadly applies in "extraordinary circumstances," Gonzalez's Brief at 11, it is much narrower than that. The court recognizes an exception to its "raise-or-waive" rule when "basic constitutional rights are concerned." *Merida*, 206 A.3d at 692-93 (quoting *State v. Gomez*, 848 A.2d 221, 237 (R.I. 2004); *State v. Donato*, 592 A.2d 140, 141 (R.I. 1991)) (internal quotation marks omitted). And, "'[t]o fall within this exception, [a] defendant must show: (1) that the error complained of amounts to more than harmless error; (2) that a sufficient record exists to permit a determination of the issue; and (3) that 'counsel's failure to raise the issue before trial must be premised upon a novel rule of law that counsel could not have reasonably known during the trial.''" *Id.* at 692-93 (quoting *State v. Florez*, 138 A.3d 789, 796 (R.I. 2016); *Cronan ex rel. State v. Cronan*, 774 A.2d 866, 878 (R.I. 2001)). Gonzalez makes no attempt to, and the Respondent submits cannot, satisfy any of these prerequisites.

The procedural default doctrine will not bar federal habeas review, however, if a petitioner can show either (1) "'cause for the default and actual prejudice as a result of the alleged violation of federal law'" or (2) "'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Lynch*, 438 F.3d at 45

(quoting *Coleman*, 501 U.S. at 750); *see also Lee v. Corsini*, 777 F.3d 46, 58 (1st Cir. 2015). Gonzalez has not done so here.

"Cause for procedural default 'must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state procedural rule.'" *Costa v. Hall*, 673 F.3d 16, 25 (1st Cir. 2012); *see also Lynch*, 438 F.3d at 46; *Horton*, 370 F.3d at 81; *Gunter*, 291 F.3d at 81. "This could include a showing that 'the factual or legal basis for a claim was not reasonably available to counsel,' or that there was 'some interference by officials.'" *Costa*, 673 F.3d at 25 (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639 (1986); *Brown v. Allen*, 344 U.S. 443, 486, 73 S. Ct. 397 (1953)).

"To show that a fundamental miscarriage of justice would occur in the habeas context, 'petitioner must establish actual innocence.'" *Gunter*, 291 F.3d at 83 (quoting *Simpson v. Matesanz*, 175 F.3d 200, 210 (1st Cir. 1999), *cert. denied*, 528 U.S. 1082 (2000)); *see also Costa*, 673 F.3d at 25; *Oakes v. United States*, 400 F.3d 92, 95 (1st Cir. 2005). To establish actual innocence, a "'petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Gunter*, 291 F.3d at 83 (quoting *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851 (1995)). "'This is a narrow exception to the cause-and-prejudice imperative, seldom to be used . . . .'" *Lee*, 777 F.3d at 62 (quoting *Burks v. Dubois*, 55 F.3d 712, 717 (1st Cir. 1995)).

Gonzalez did not and cannot establish cause and prejudice. Gonzalez has never identified an objective external factor that precluded his attorney from raising this *Brady* claim at trial, thereby preserving the issue for review on direct appeal, *see generally* Gonzalez's Brief at 11-15; Amended Petition at 14-17, and has instead asserted only that he did not personally receive a copy of the recording of the controlled call until his appeal was pending in state court, *see* Amended Petition at 15.[6]

Nor has he established prejudice resulting from the State's alleged failure to produce the recording of the controlled call prior to or during trial in state court. *See* Gonzalez's Brief at 11-15. First, Gonzalez could not have introduced the recording into evidence at trial. *See State v. Harnois*, 638 A.2d 532, 535-36 (R.I. 1994) (exception to hearsay rule did not permit defendant who did not testify to introduce his prior recorded statement into evidence). Second, defense counsel advised the trial court that he could effectively cross-examine Garcia without getting into the substance of the phone call. Tr. IV at 1078-79.

Gonzalez also has not established that there would be a miscarriage of justice if this Court did not address the merits of his *Brady* claim. *See* Gonzalez's Brief at

---

[6] The state court record reflects that the State produced a copy of the recording of the controlled phone call in January 2013, prior to Gonzalez's first trial in state court. *See* State's Rule 5 Appendix at Ex. 2, p. 40 (Brief of Appellee State of Rhode Island (SU-2019-0067-CA)) (Docket Entry No. 13-2).

11-15. This requires a petitioner to establish actual innocence; Gonzalez has not done so. *See Gunter*, 291 F.3d at 83.

For these reasons, this Court should deny Gonzalez's claim that the District Court erroneously denied his claim that the State violated its obligations under *Brady v. Maryland*.

## CONCLUSION

For the reasons identified above, this Court should affirm the District Court's denial of habeas corpus relief because the District Court correctly held that: (1) the Rhode Island Supreme Court's decision denying Petitioner-Appellant Tony Gonzalez's fair cross-section claim was not contrary to, and did not constitute an unreasonable application of, clearly established federal law; and (2) Gonzalez was not entitled to federal habeas relief based on his *Brady* claim because the Rhode Island Supreme Court denied that claim on independent and adequate state law grounds.

**WAYNE T. SALISBURY, JR.
RESPONDENT**

By his Attorneys,

**PETER F. NERONHA
ATTORNEY GENERAL**

/s/ Christopher R. Bush

_____
Christopher R. Bush, #41229
Assistant Attorney General
Office of the Attorney General
150 South Main Street
Providence, RI  02903
(401) 274-4400 (phone)
(401) 222-2929 (fax)
cbush@riag.ri.gov

Date:  June 17, 2024

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 8,295 words excluding the items identified in Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (Times New Roman 14 point) using Microsoft Word 365.

/s/ Christopher R. Bush
_____
Christopher R. Bush #41229
Assistant Attorney General

## CERTIFICATE OF SERVICE

I certify that on June 17, 2024, I electronically filed this brief and that it is available for viewing and downloading from the ECF system.  I also certify that I mailed a copy of this brief to the following:

Tony G. Gonzalez (#144796)
P.O. Box 8273
Cranston, RI  02920

/s/ Christopher R. Bush
_____

# ADDENDUM

*State v. Gonzalez*, 254 A.3d 813 (R.I. 2021) ............................................................1

Docket: *Gonzalez v. Coyne-Fague*, No. 1:22-cv-00174-JJM-PAS .......................14

*Gonzalez v. Coyne-Fague*, No. 1:22-cv-00174-JJM-PAS, Order dated July 11, 2023

............................................................................................................................18

254 A.3d 813
Supreme Court of Rhode Island.

STATE
v.
Tony GONZALEZ.

No. 2019-67-C.A.
|
(K1/12-341A)
|
July 2, 2021

**Synopsis**
**Background:** Defendant was convicted in the
Superior Court, Kent County, Bennett R. Gallo,
J., of first-degree murder, assault with intent
to commit a felony, and discharging a firearm
while committing a crime of violence. He
appealed. The Supreme Court, ⚑136 A.3d
1131, vacated and remanded. Following retrial
on remand and denial of motion to suppress
in part, defendant was again convicted in the
Superior Court, Daniel Procaccini, J., of first-
degree murder, assault with intent to commit
a felony, and discharging a firearm while
committing a crime of violence. Defendant
filed pro se appeal.

**Holdings:** The Supreme Court, Long, J., held
that:

[1] identity and testimony of individuals
discovered through records from defendant's
cell phone were admissible under collateral
source doctrine;

[2] jury was not required to be discharged on
basis of Sixth Amendment requirement that
juries be selected from a fair cross-section of
community; and

[3] trial justice did not abuse its discretion
by declining to declare a mistrial based on
witness's two reference to first trial.

Affirmed.

**Procedural Posture(s):** Appellate Review;
Pre-Trial Hearing Motion; Trial or Guilt Phase
Motion or Objection.

West Headnotes (17)

**[1]** **Criminal Law** ⚬ Evidence
wrongfully obtained
When reviewing a motion to
suppress, appellate court will not
overturn a trial justice's factual
findings unless they are clearly
erroneous.

3 Cases that cite this headnote

**[2]** **Criminal Law** ⚬ Illegally obtained
evidence
When reviewing a motion to
suppress, with respect to any
purported violations of a defendant's
constitutional rights, appellate
court must make an independent
examination of the record to
determine if the defendant's rights
have been violated.

**[3] Criminal Law** ⟵ Reception of evidence

In conducting the independent examination of the record to determine whether defendant's constitutional rights have been violated when reviewing motion to suppress, appellate court views the evidence in the record in the light most favorable to the state.

1 Case that cites this headnote

**[4] Criminal Law** ⟵ Causal nexus; independent discovery or basis or source

Exclusionary rule, which includes within its scope certain evidence derived from illegal police activity, does not apply when government learns of evidence from source independent of original violation.

**[5] Criminal Law** ⟵ Causal nexus; independent discovery or basis or source

Identity and testimony of individuals discovered through records from defendant's cell phone, which was seized pursuant to an illegal arrest, were admissible under collateral source doctrine, since identity and testimony of individuals would have been discovered independent of the illegal arrest; police lawfully

obtained a call log for cell phone pursuant to an administrative warrant served on cell phone company using the phone number given to them by witness, and police were able to assign identities to phone numbers that appeared in call log using internet search engines. U.S. Const. Amend. 4.

**[6] Jury** ⟵ Representation of community, in general

A motion to discharge an under-representative jury requires an analysis pursuant to the Sixth Amendment. U.S. Const. Amend. 6.

**[7] Criminal Law** ⟵ Review De Novo

Appellate court engages in a de novo review of any questions of law and of mixed questions of law and fact involving constitutional issues.

2 Cases that cite this headnote

**[8] Jury** ⟵ Representation of community, in general

Defendants have a right under the Sixth Amendment to select a petit jury from a fair cross-section of the community. U.S. Const. Amend. 6.

**[9] Jury** ⟵ Representation of community, in general

To demonstrate a prima facie violation of the Sixth Amendment's requirement that juries be selected from a fair cross-section of the community, a defendant must establish: (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under representation is due to systematic exclusion of the group in the jury-selection process. U.S. Const. Amend. 6.

**[10]  Jury** ⬤ Particular Groups, Inclusion or Exclusion

Makeup of jury did not require that jury be discharged in murder prosecution under Sixth Amendment requirement that juries be selected from a fair cross-section of the community, despite contention that there did not appear to be any Hispanic jurors in the pool; there was no data or appropriate statistical analysis of data to indicate disparity between the percentage of members of a distinctive group in relevant population and the percentage of group members in jury pool, and there was no indication that any under-representation of Hispanic jurors was caused by a systematic exclusion of Hispanic individuals

in the jury selection process. U.S. Const. Amend. 6.

**[11]  Jury** ⬤ Representation of community, in general

To establish that the representation of group alleged to be excluded from a jury in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, as required to establish prima facie violation of Sixth Amendment requirement that juries be selected from a fair cross-section of the community, defendant is required to introduce competent evidence, that is, data, regarding the makeup of the venire from which his jury was selected. U.S. Const. Amend. 6.

**[12]  Criminal Law** ⬤ Unresponsive, unsolicited, and unexpected testimony

On retrial in murder prosecution, trial justice did not abuse its discretion by declining to declare a mistrial based on witness's two reference to first trial; justice carefully deliberated and ultimately determined after witness's first reference to first trial that any potential prejudice that may have resulted could be cured with an appropriate jury instruction, and trial justice dismissed jury for lunch following witness's second reference and entertained arguments from the

parties before again determining that any prejudice that might have resulted from the reference was not incurable.

**[13]** **Criminal Law** 👈 Discretion of court

**Criminal Law** 👈 Issues related to jury trial

The decision to pass a case and declare a mistrial belongs to the trial justice, and the appellate court gives great weight to his or her sound discretion.

1 Case that cites this headnote

**[14]** **Criminal Law** 👈 Issues related to jury trial

When ruling on a motion to pass a case, appellate court will reverse a trial justice's ruling on appeal only if it was clearly wrong.

3 Cases that cite this headnote

**[15]** **Criminal Law** 👈 Evidentiary Matters

Trial justice is not required to pass a case and declare a mistrial at each instance a witness offers a prejudicial statement against a criminal defendant.

**[16]** **Criminal Law** 👈 Unresponsive, unsolicited, and unexpected testimony

**Criminal Law** 👈 Conduct of or affecting witness

The trial justice enjoys a ringside seat at the trial and therefore is in the best posture to determine, on motion to pass a case, whether a witness's inappropriate remark or action has so inflamed the jurors that they no longer would be able to decide the case based on a calm and dispassionate evaluation of the evidence.

1 Case that cites this headnote

**[17]** **Criminal Law** 👈 Arguments and conduct in general

Appellate court would not address defendant's argument on appeal that state violated 🚩*Brady* by failing to provide defendant with a recording of controlled phone call between defendant and his brother on the morning of his arrest, since issue was not raised prior to or during defendant's murder trial. R.I. Super. Ct. R. Crim. P. 30.

**\*815** Kent County Superior Court, Associate Justice Daniel Procaccini

## Attorneys and Law Firms

Christopher R. Bush, Department of Attorney General, for State.

Tony Gonzalez, pro se.

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## OPINION

Justice Long, for the Court.

The defendant, Tony Gonzalez (defendant or Mr. Gonzalez), appeals *pro se* from a Superior Court judgment of conviction for first-degree murder, assault with intent to commit a felony, and two counts of discharging a firearm while committing a crime of violence. This case had been previously tried, but this Court vacated the defendant's conviction based on our holding that the trial justice erred in failing to exclude evidence seized following the warrantless arrest of Mr. Gonzalez in his mother's home. ⚑ *State v. Gonzalez*, 136 A.3d 1131, 1154, 1159 (R.I. 2016).

Mr. Gonzalez alleges that three errors were committed by the trial justice: (1) the denial of his motion to suppress evidence obtained from his cell phone, which police seized following his warrantless arrest; (2) the denial of his motion to discharge the jury in violation of the Sixth Amendment to the United States Constitution; and (3) the denial of his motions for a mistrial. Mr. Gonzalez also contends that the state violated its obligations under ⚑ *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10

L.Ed.2d 215 (1963). For the reasons stated herein, we affirm the judgment of the Superior Court. A summary of the facts relevant to this appeal follows, and additional facts are included in the discussion of the issues.

## Facts and Procedural History

Saturday, January 21, 2012, was a snowy winter day that began with the breakup of defendant and his "on and off" girlfriend, Patricia Delomba. Sadly, the day ended in senseless violence and tragedy for Ms. Delomba, her new boyfriend Matthew Chivers, and their mutual friend, Carl Cunningham. [1]

[1] Ms. Delomba went on to marry Mr. Chivers and has taken his last name. This opinion refers to her by her maiden name, the name she used during the events giving rise to defendant's trial, so as to avoid confusion.

In the evening, hours after Ms. Delomba ended her longtime hectic relationship with defendant, defendant traded multiple phone calls with Mr. Chivers about meeting up for a fight. Mr. Gonzalez also communicated with Ms. Delomba; she told him via text message not to come to her house, **\*816** but he responded that he was coming over. He also indicated that "the ACI was going to be his new home."

At 11:43 p.m., Ms. Delomba received a text message from defendant stating that he was on his way to her house. Shortly thereafter, Mr. Gonzalez arrived at the house and began banging on the door. When Ms. Delomba opened the door, Mr. Gonzalez said that he

wanted to fight Mr. Chivers. Ms. Delomba told defendant to leave, and she slammed the door closed. However, defendant entered the house and pushed his way into the bedroom, where he found Ms. Delomba, Mr. Chivers, and Mr. Cunningham. The defendant, with a gun in hand, stated, "I got something for you." Mr. Chivers and Mr. Cunningham both attempted to take cover in the bedroom closet, but defendant fired bullets toward the closet until he exhausted his supply of ammunition, fatally wounding Mr. Cunningham. The defendant then fled the scene. Within minutes, Mr. Chivers and Ms. Delomba contacted 911 to report the shooting.

Shortly after Mr. Cunningham was fatally shot at around midnight, the police interviewed Ms. Delomba at the police station. She described what had transpired at her home, identified Mr. Gonzalez as the shooter, and authorized a search of her cell phone. She also gave the police Mr. Gonzalez's cell-phone number. Using the number, the police determined that defendant's cell phone was serviced through Sprint Metro PCS (Metro PCS). The police made an initial request to Metro PCS for any information about the cell phone in order to determine whether the phone and, in turn, Mr. Gonzalez could be located. Metro PCS did not have this capability. However, the police were able to locate Mr. Gonzalez at approximately 5:30 a.m. when his brother, who cooperated with the investigation, placed a controlled phone call to defendant.

Shortly after 7 a.m., police from the Warwick Police Department and the Providence Police Department arrested defendant in his mother's house without a warrant. Once at police headquarters, the police discovered a cell phone on defendant's person. They then applied for and executed two warrants: an administrative warrant served on Metro PCS to obtain any phone records associated with defendant and a search warrant for defendant's cell phone.

The search of defendant's cell phone revealed the phone's call log, along with photographs and text messages. The administrative warrant served on Metro PCS produced a log of all incoming and outgoing calls from defendant's cell phone in the hours surrounding the death of Mr. Cunningham. Although the Metro PCS call log did not reveal any names or other explicitly identifying information, the police managed to identify phone subscribers associated with numbers from the call log by using various internet search engines. The police tracked down several of those individuals and interviewed them in an effort to assist with their investigation.

Mr. Gonzalez was indicted in May 2012 on four counts: murder in the first degree, resulting in the death of Carl Cunningham; assault with intent to commit a felony; and two counts of discharging a firearm while committing a crime of violence. The defendant was tried by jury in 2013 and was found guilty on all counts. After our opinion in *Gonzalez*, in which we vacated defendant's conviction after concluding that the trial justice erred in failing to exclude evidence seized during defendant's warrantless arrest, Mr. Gonzalez was retried in 2017; he was again convicted by a jury on all four counts. For those offenses, the trial justice sentenced Mr. Gonzalez to life **\*817** imprisonment at the Adult Correctional Institutions for the murder

conviction; a consecutive twenty-year sentence for the assault conviction; and a life sentence plus a consecutive ten years for the convictions for two counts of discharging a firearm when committing a crime of violence. Mr. Gonzalez timely appealed.

### The Motion to Suppress

In a pretrial motion, defendant had moved to suppress the cell phone along with any information retrieved from the cell phone, including the identity, testimony, statements, or evidence of certain individuals discovered through the phone records. The defendant asserted that, in accordance with this Court's opinion in *Gonzalez*, the cell phone was seized pursuant to an illegal arrest, and, therefore, the fruits of that seizure must be suppressed pursuant to the Fourth Amendment to the United States Constitution. *See Gonzalez*, 136 A.3d at 1156, 1159.

After hearing testimony by two officers involved in defendant's arrest and the subsequent search of his cell phone, the trial justice found that police obtained the cell phone as a result of defendant's unlawful arrest. The trial justice therefore suppressed the cell phone along with any information discovered on the cell phone. However, he denied the motion to suppress with respect to testimony of the individuals discovered through the cell-phone records, finding that information to be admissible under the independent source doctrine. The trial justice cited testimony by one of the officers, who explained that he "learned of [the] identities by * * * taking the phone number that was given to him by Ms.

Delomba very early in the investigation and bringing that to Metro PCS[,]" which, in turn, generated a call log; police were able to search the internet to identify subscribers for those numbers.

**[1]** **[2]** **[3]** "When this Court reviews a motion to suppress, we 'will not overturn a trial justice's factual findings unless they are clearly erroneous.' " *State v. Tejeda*, 171 A.3d 983, 994-95 (R.I. 2017) (quoting *State v. Harrison*, 66 A.3d 432, 441 (R.I. 2013)). "With respect to any purported violations of a defendant's constitutional rights, 'this Court must make an independent examination of the record to determine if the defendant's rights have been violated.' " *Id.* (brackets omitted) (quoting *Harrison*, 66 A.3d at 441). "In conducting the independent examination, 'we view the evidence in the record in the light most favorable to the state.' " *Id.* (quoting *State v. Santos*, 64 A.3d 314, 319 (R.I. 2013)).

**[4]** "The exclusionary rule, which includes within its scope certain evidence derived from illegal police activity, does not apply when the government learns of evidence from a source independent of the original violation." *State v. Ducharme*, 601 A.2d 937, 942 (R.I. 1991) (citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).

**[5]** Here, there is no question that defendant's arrest was illegal, as this Court decided in *Gonzalez*. *See Gonzalez*, 136 A.3d at 1154. Accordingly, our analysis is limited to considering whether the identity and testimony of the individuals that Mr. Gonzalez sought to suppress would have been discovered

independent of the illegal arrest and, in turn, the discovery of defendant's cell phone on his person. After our independent review of the record, we cannot say that the trial justice's findings were clearly erroneous. The testimony by the officers involved in the search supports the finding that, although the police learned the identity of certain individuals after searching defendant's cell phone itself, they had lawfully obtained a call log pursuant to an administrative warrant served on Metro PCS using the phone **\*818** number given to them by Ms. Delomba early in the investigation. Using various internet search engines, the police managed to assign identities to the phone numbers that appeared in the call log. As such, it is clear to this Court that the identity, and subsequent testimony, of the individuals that Mr. Gonzalez sought to suppress were obtained independently from the illegal seizure of his cell phone and, therefore, the trial justice did not err in denying defendant's motion to suppress.

### The Motion to Discharge the Jury

In a second pretrial motion, defense counsel moved for a change in venue on two grounds: the substantial media coverage surrounding defendant's trial and census data indicating "that a mere 3 to 4.6 percent of the population of Kent County \* \* \* is Hispanic or Latino and only 1.9 percent of said population is of two or more races." In arguing the motion, counsel conceded that there was no recent pretrial publicity, but he expressed his concern over substantial media coverage of the murder in 2012. Defense counsel, citing scant caselaw, also raised a concern about a constitutionally under-representative jury. He noted that defendant is Hispanic, a member of a distinctive community, and he cited the census data for Kent County. However, counsel acknowledged that he had no evidence, at that time, prior to voir dire, to suggest that Hispanic individuals were systematically excluded from the jury selection process in this case. The trial justice denied defendant's motion.

On October 12, 2017, immediately after the jury was impaneled, defense counsel challenged the makeup of the jury at sidebar. He moved to discharge the jury pursuant to the Sixth Amendment to the United States Constitution, referencing his pretrial argument, and he stated that "[t]here were no Hispanics in the jury pool that I was able to determine." Counsel also renewed his motion to change the venue of defendant's trial to Providence County, asserting that Providence County has a Hispanic population that is significantly greater than the Hispanic population of Kent County. The trial justice accepted counsel's assertions regarding the makeup of the Hispanic population in Providence County as true, but stated that

> "without establishing some actual prejudice that would flow to this defendant by not having Hispanics on the jury, I think the Court is hard pressed to address that in any way. I'm not aware of any case law in Rhode Island that explores this issue at all. I think in the other cases I found from around the country it is generally an unsuccessful argument for change of venue."

The trial justice did not explicitly rule on defense counsel's motion to discharge the jury.

The following day, Mr. Gonzalez addressed the court directly and asked about the challenge to the array. Mr. Gonzalez sought an explanation because he did not participate in the sidebar motion and because he felt that the jury was not selected from a fair cross-section of the community. The trial justice and Mr. Gonzalez then had the following exchange:

"THE COURT: Here is the thing, though, on any given day we don't know who a defendant is going to be in a case. I think what you are suggesting is that we selectively go out and make sure that we pack a jury with some people who will surely represent the ethnicity and race of the defendant. My understanding is the law doesn't go that far.

"THE DEFENDANT: I understand.

"THE COURT: What we can't do is make sure that we pick in a fashion to exclude them, to systematically or intentionally exclude. Obviously that would be **\*819** completely inappropriate and unlawful but I'm not aware of anything that says you have to make sure you go out and find some and make sure they are in that group.

"I understand your point. Maybe the law will evolve to that point some day, but I'm duty bound to follow the law as it exists. I am comfortable that this is a trial that is proceeding the way the law requires it to, and I just have no basis to grant the change of venue."

The defendant claims that the trial justice erred when he inappropriately addressed the challenge to the array of jurors. [2]

2   The defendant also complains about certain statements that the trial justice offered while attempting to assure defendant that he would be tried fairly. The trial justice told defendant that the trial justice's reputation is well-regarded in the state and the ACI and that, "no one has a greater appreciation of the atmosphere in the courtroom" than he. He added, "I think I have been on the bench long enough that I'm pretty good at it[,]" and he cited trials over which he presided where minority defendants were found not guilty. We pause to note that such unfortunate statements do not assuage the concerns of defendants who worry about the fairness of their trial.

**[6]   [7]   [8]   [9]** A motion to discharge an under-representative jury requires an analysis pursuant to the Sixth Amendment to the Constitution of the United States. "We engage in a *de novo* review of any questions of law and of mixed questions of law and fact involving constitutional issues." *State v. Querido*, 229 A.3d 410, 415 (R.I. 2020) (quoting *State v. Morris*, 92 A.3d 920, 924 (R.I. 2014)). As this Court has recognized on numerous occasions, defendants have a right under the Sixth Amendment to select a petit jury from a fair cross-section of the community. *See State v. Lawless*, 996 A.2d 166, 168 (R.I. 2010) (mem.); *State v. Sosa*, 839 A.2d 519, 528 (R.I. 2003); *State v. Raymond*, 446 A.2d 743, 745 (R.I. 1982); *see also Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). To demonstrate a

prima facie violation of the fair cross-section requirement, a defendant must establish:

> "(1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under representation is due to systematic exclusion of the group in the jury-selection process." 🚩⚠️*Sosa*, 839 A.2d at 528 (quoting 🚩*Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979)).

**[10]** This Court takes seriously any alleged violation of the fair cross-section requirement. When presented with a challenge to the array of a jury, it is critically important that the trial justice undertakes the appropriate analysis under 🚩*Duren* and addresses the motion to discharge the jury accordingly. Our careful review of the record in this case reveals that the trial justice repeatedly and explicitly denied the motion to change venue, but that he did not specifically address the motion to discharge the jury, despite defendant's expressed concerns about the jury makeup.

**[11]** However, it is also clear from the record that defendant failed to establish a prima facie violation of the fair cross-section requirement. Although there is no dispute that defendant is Hispanic and thus a member of a distinctive community, it was defendant's burden to provide evidence that indicates that the representation of Hispanic individuals in the "venire[ ] from which [his jury was] selected is not fair and reasonable in relation to the number of such persons in the community[.]" 🚩⚠️ **\*820** *Sosa*, 839 A.2d at 528 (quoting 🚩*Duren*, 439 U.S. at 364, 99 S.Ct. 664). Even accepting the census data for Kent County as accurate, counsel's observation that there did not appear to be any Hispanic jurors in the pool was not sufficient. Rather, to meet the second prong under 🚩*Duren*, defendant was required to introduce competent evidence—data—regarding the makeup of the venire from which his jury was selected. *See* 🚩*United States v. Royal*, 174 F.3d 1, 6-7 (1st Cir. 1999) (explaining that the absolute disparity test "measures the difference between the percentage of members of the distinctive group in the relevant population and the percentage of group members on the jury wheel"). Without such data, or an appropriate statistical analysis of that data to indicate disparity, the trial justice could not properly assess defendant's challenge to the array.

Moreover, it was also defendant's burden to introduce evidence establishing that any under-representation of Hispanic jurors in Kent County was caused by a systematic exclusion of Hispanic individuals in the jury selection process. *See* 🚩*Berghuis v. Smith*, 559 U.S. 314, 332, 130 S.Ct. 1382, 176 L.Ed.2d 249 (2010) (holding that systematic exclusion cannot be established "merely by pointing to a host of factors that, individually or in combination, *might* contribute to a group's underrepresentation").

We therefore conclude that there is no evidence in the record to support defendant's claim that the trial justice erred when he did not discharge the jury impaneled on October 12, 2017.

## The Motion to Pass

**[12]** Mr. Chivers testified at defendant's trial. After testifying on direct examination that he saw the gunman reach through the door wielding a black gun and wearing a "black vest or jacket * * * one of the bubble ones, old school bubble ones[,]" Mr. Chivers admitted on cross-examination that he never saw the gun or observed the clothing of the gunman. On redirect examination, the state and the witness engaged in the following dialogue:

"Q: Matt, why did you lie?

"A: That is what I was told.

"Q: Who told you that?

"A: That is what I had heard.

"Q: When did you hear that?

"A: Throughout the years after the trial the first time."

Counsel for Mr. Gonzalez promptly objected to Mr. Chivers's reference to the previous trial and at sidebar moved to pass the case. After a lengthy discussion with the state and defense counsel, and after considering various factors such as the witness's "murmur and low tone of voice[,]" how clearly he was able to hear the reference to the first trial, and the attentiveness of the jury, the trial justice denied defendant's motion and gave a carefully-crafted curative instruction to the jury that made no mention of a previous trial, so as to avoid bringing more

attention to the issue. The state then concluded its redirect examination of Mr. Chivers.

Counsel for Mr. Gonzalez began re-cross examination of the witness. Defense counsel asked Mr. Chivers if he had knowledge of the gunman's clothing through the media. After Mr. Chivers indicated that he did acquire this information through the media, counsel asked Mr. Chivers, "When this shooting occurred in 2012, did you get that information from the Providence Journal?"; Mr. Chivers replied, "Yes, then I was talking with my wife after the last trial." Defense counsel immediately asked for a sidebar, the trial justice excused the jury for lunch, and counsel, again, moved to pass the case based on Mr. Chivers's reference to the previous trial. The trial **\*821** justice invited the parties to conduct research and offer arguments later that afternoon. After listening to the arguments, the trial justice denied defendant's motion after finding that the second reference to the prior trial by Mr. Chivers did not "rise[ ] to the level of prejudice that is incurable." Accordingly, the trial justice gave the jury another curative instruction.

**[13]** **[14]** "The decision to pass a case and declare a mistrial belongs to the trial justice, and this Court gives great weight to his or her sound discretion." *State v. LaPlante*, 962 A.2d 63, 70 (R.I. 2009). "When ruling on a motion to pass a case, this Court will reverse a trial justice's ruling on appeal only if it was clearly wrong." *Id.*

**[15]** **[16]** Our caselaw does not require a trial justice to pass a case at each instance a witness offers a prejudicial statement against a criminal defendant. *See, e.g., State v. Bolduc*,

822 A.2d 184, 186 (R.I. 2003) ("Not all potentially prejudicial statements or other disturbing events that occur during a trial require the trial justice to pass the case."). "The trial justice enjoys a ringside seat at the trial and therefore is in the best posture to determine whether a witness's inappropriate remark or action has so inflamed the jurors that they no longer would be able to decide the case based on a calm and dispassionate evaluation of the evidence." ⚑*State v. Lynch*, 854 A.2d 1022, 1033 (R.I. 2004) (brackets omitted) (quoting *State v. Werner*, 830 A.2d 1107, 1113 (R.I. 2003)).

We cannot say that the trial justice abused his discretion or was clearly wrong by declining to declare a mistrial based on Mr. Chivers's two references to the first trial. After Mr. Chivers referenced "the trial the first time" and defense counsel objected and moved to pass the case at sidebar, the trial justice carefully deliberated and ultimately determined that any potential prejudice that may have resulted could be cured with an appropriate instruction to the jury. He did so only after a lengthy discussion with counsel for Mr. Gonzalez and the state about the effect, if any, that the witness's statement could have had on the jury based on the trial justice's own perception and observations.

After Mr. Chivers referenced the first trial for a second time, the trial justice dismissed the jury for lunch, entertained arguments from the parties, and, again, determined that any prejudice that might have resulted from the reference was not incurable. Of course, it is the trial justice who, because of his "ringside seat[,]" is in the best position to make such a determination. *See* ⚑*Lynch*, 854 A.2d at 1033.

It is clear from our review of the record that the trial justice was sensitive to any effect that Mr. Chivers's references may have had on the jury, but that he ultimately found that any effect was negligible. *See, e.g.,* ⚑*Magraw v. Roden*, 743 F.3d 1, 9, 11 (1st Cir. 2014) (mistrial not required after prosecutor made three references to prior trial); ⚑*Moore v. Quarterman*, 534 F.3d 454, 466-67 (5th Cir. 2008) (mistrial not required after witness made three references to prior trial).

### The Alleged ⚑*Brady* Violation

 **[17]** The defendant raises an additional argument before this Court on appeal: that the state violated its obligations under ⚑*Brady*, cited *supra*, by failing to provide him with a recording of the controlled phone call between him and his brother on the morning of his arrest. It is apparent from the record, however, that this issue was not raised prior to or during defendant's trial. Pursuant to our well-settled raise-or-waive rule, "no party may assign as error any portion of the charge or omission therefrom unless the party objects thereto before the jury retires to consider **\*822** its verdict[.]" *State v. Hunt*, 137 A.3d 689, 693 (R.I. 2016) (brackets omitted) (quoting Super. R. Crim. P. 30). As such, we need not, and shall not, address this issue on appeal.

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The record shall be returned to the Superior Court.

## All Citations

254 A.3d 813

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

# U.S. District Court
## District of Rhode Island (Providence)
## CIVIL DOCKET FOR CASE #: 1:22–cv–00174–JJM–PAS

Gonzalez v. Coyne–Fague
Assigned to: Chief Judge John J. McConnell, Jr.
Referred to: Magistrate Judge Patricia A. Sullivan
Case in other court:  First Circuit, 23–01821
Cause: 28:2254 Petition for Writ of Habeas Corpus (State)

Date Filed: 04/27/2022
Date Terminated: 08/19/2022
Jury Demand: None
Nature of Suit: 555 Habeas Corpus (Prison Condition)
Jurisdiction: Federal Question

**Petitioner**

**Tony G. Gonzalez**
144796
PO Box 8273
Cranston, RI

represented by **Charles A. Tamuleviz**
McLaughlinQuinn LLC
148 West River Street
Suite 1E
Providence, RI 02904
401–655–2205
Fax: 401–421–5141
Email: chuck@mclaughlinquinn.com
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**Patricia A. Coyne–Fague**

represented by **Christopher R. Bush**
Office of the Attorney General
150 South Main Street
Providence, RI 02903
274–4400 x 2025
Fax: 222–5110
Email: cbush@riag.ri.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/27/2022 | 1 | PETITION for Writ of Habeas Corpus, filed by Tony G. Gonzalez. (Attachments: # 1 Letter, # 2 Envelope)(Kenny, Meghan) (Entered: 04/27/2022) |
| 04/27/2022 | 2 | EXHIBIT IN SUPPORT by Tony G. Gonzalez in support of 1 PETITION for Writ of Habeas Corpus. (Attachments: # 1 Exhibit 2, # 2 Exhibit 3, # 3 Exhibit 4, # 4 Exhibit 5)(Kenny, Meghan) (Entered: 04/27/2022) |
| 04/27/2022 | 3 | DOCKET NOTE: Petitioner provided duplicate copies of documents 1 and 2 . (Kenny, Meghan) (Entered: 04/27/2022) |
| 04/27/2022 | 4 | TEXT ORDER entered directing the petitioner to pay the habeas corpus filing fee in the amount of $5.00 or to file a motion to Proceed in Forma Pauperis Filing Fee or Motion to Proceed In Forma Pauperis due on or before 5/18/2022. So Ordered by District Judge Mary S. McElroy on 4/27/2022. (Kenny, Meghan) (Entered: 04/27/2022) |
| 05/09/2022 | 5 | MOTION to Disqualify Judge filed by Tony G. Gonzalez. **Responses due by 5/23/2022.** (Attachments: # 1 Envelope)(Kenny, Meghan) (Entered: 05/09/2022) |
| 05/13/2022 | | Filing fee: $ 5.00, receipt number 14670026552 (Kenny, Meghan) (Entered: 05/13/2022) |
| 05/16/2022 | | TEXT ORDER denying as moot 5 Motion to Disqualify Judge. So Ordered by District Judge Mary S. McElroy on 5/16/2022. (Potter, Carrie) (Entered: 05/16/2022) |

| 05/16/2022 | | Case reassigned to Chief Judge John J. McConnell, Jr. District Judge Mary S. McElroy no longer assigned to the case. (Potter, Carrie) (Entered: 05/16/2022) |
|---|---|---|
| 05/17/2022 | 6 | ORDER entered directing the State of Rhode Island to respond; **State of Rhode Island Response due by 6/16/2022**. So Ordered by Chief Judge John J. McConnell, Jr. on 5/17/2022. (Jackson, Ryan) (Entered: 05/17/2022) |
| 06/16/2022 | 7 | MOTION for an Extension of Time To Respond To Petition for Writ of Habeas Corpus filed by Patricia A. Coyne−Fague. **Responses due by 6/30/2022.** (Bush, Christopher) (Entered: 06/16/2022) |
| 06/17/2022 | | TEXT ORDER granting 7 MOTION for an Extension of Time To Respond To Petition for Writ of Habeas Corpus up to and including 7/16/22. So Ordered by Chief Judge John J. McConnell, Jr. on 6/17/2022. (Jackson, Ryan) (Entered: 06/17/2022) |
| 06/28/2022 | 8 | EXHIBIT IN SUPPORT, Missing pages(6−7) of transcript, by Tony G. Gonzalez in support of 2 Exhibit in Support, Exhibit 4. (Attachments: # 1 Envelope)(DaCruz, Kayla) (Entered: 06/28/2022) |
| 06/28/2022 | 9 | NOTICE of Related Proceedings by Tony G. Gonzalez (Attachments: # 1 Envelope)(DaCruz, Kayla) (Entered: 06/28/2022) |
| 07/14/2022 | 10 | MOTION for Summary Judgment filed by Patricia A. Coyne−Fague. **Responses due by 7/28/2022.** (Attachments: # 1 Cover Letter, # 2 Exhibit, # 3 Envelope)(Kenny, Meghan) (Entered: 07/14/2022) |
| 07/14/2022 | 11 | STATEMENT OF UNDISPUTED FACTS by Tony G. Gonzalez. (Attachments: # 1 Envelope)(Kenny, Meghan) (Entered: 07/14/2022) |
| 07/18/2022 | 12 | MOTION to Dismiss *Petition for Writ of Habeas Corpus* filed by Patricia A. Coyne−Fague. **Responses due by 8/1/2022.** (Attachments: # 1 Exhibit Docket: K1−2012−0341A, # 2 Exhibit State v. Gonzalez, 254 A.3d 813 (R.I. 2021))(Bush, Christopher) (Entered: 07/18/2022) |
| 07/18/2022 | 13 | ADMINISTRATIVE RECORD filed *Rule 5 Appendix* by Patricia A. Coyne−Fague NOTICE: In order to view this document, you must first log in using your CMECF Filer login.. (Attachments: # 1 Exhibit Brief of the Defendant−Appellant Tony Gonzalez (SU−2019−0067−CA), # 2 Exhibit Brief of Appellee State of Rhode Island (SU−2019−0067−CA))(Bush, Christopher) (Entered: 07/18/2022) |
| 07/26/2022 | 14 | RESPONSE In Opposition to 12 MOTION to Dismiss *Petition for Writ of Habeas Corpus* filed by Tony G. Gonzalez. **Replies due by 8/2/2022.** (Attachments: # 1 Cover Letter, # 2 Envelope)(DaCruz, Kayla) (Entered: 07/26/2022) |
| 07/26/2022 | 15 | MOTION to Appoint Counsel filed by Tony G. Gonzalez. **Responses due by 8/9/2022.** (Attachments: # 1 Cover Letter, # 2 Envelope)(DaCruz, Kayla) (Entered: 07/26/2022) |
| 07/28/2022 | | TEXT ORDER denying 15 Motion to Appoint Counsel: Plaintiff's Motion to Appoint Counsel 15 is DENIED without prejudice. Mr. Gonzalez has well represented himself to date. As the case progresses, Mr. Gonzalez can renew his motion. So Ordered by Chief Judge John J. McConnell, Jr. on 7/28/2022. (Jackson, Ryan) (Entered: 07/28/2022) |
| 07/28/2022 | 16 | RESPONSE In Opposition to 10 MOTION for Summary Judgment filed by Patricia A. Coyne−Fague. **Replies due by 8/4/2022.** (Bush, Christopher) (Entered: 07/28/2022) |
| 08/02/2022 | 17 | REPLY to Response re 14 Response to Motion *to Dismiss Petition for Writ of Habeas Corpus* filed by Patricia A. Coyne−Fague. (Bush, Christopher) (Entered: 08/02/2022) |
| 08/09/2022 | 18 | REPLY to Response re 16 Response to Motion filed by Tony G. Gonzalez. (Attachments: # 1 Envelope)(Simoncelli, Michael) (Entered: 08/09/2022) |
| 08/19/2022 | 19 | ORDER granting 12 Motion to Dismiss, denying as moot 10 Motion for Summary Judgment, and dismissing 1 Petition for Writ of Habeas Corpus. So Ordered by Chief Judge John J. McConnell, Jr. on 8/19/2022. (Jackson, Ryan) (Entered: 08/19/2022) |
| 08/19/2022 | 20 | JUDGMENT. So Ordered by Deputy Clerk: Ryan H. Jackson on 8/19/2022. (Jackson, Ryan) (Jackson, Ryan). (Entered: 08/19/2022) |

| | | |
|---|---|---|
| 08/24/2022 | 21 | MOTION to Amend/Correct *Petition* filed by Tony G. Gonzalez. **Responses due by 9/7/2022.** (Attachments: # 1 Envelope)(Kenny, Meghan) (Entered: 08/24/2022) |
| 09/09/2022 | | TEXT ORDER granting 21 Motion to Amend Petition. So Ordered by Chief Judge John J. McConnell, Jr. on 9/9/2022. (Jackson, Ryan) (Entered: 09/09/2022) |
| 09/12/2022 | 22 | AMENDED COMPLAINT against Patricia A. Coyne–Fague, filed by Tony G. Gonzalez. (Attachments: # 1 Letter, # 2 Envelope)(DaCruz, Kayla) (Entered: 09/12/2022) |
| 10/06/2022 | 23 | ORDER entered directing the State of Rhode Island to respond **State of Rhode Island Response due by 11/7/2022**. So Ordered by Chief Judge John J. McConnell, Jr. on 10/6/2022. (Jackson, Ryan) (Entered: 10/06/2022) |
| 11/07/2022 | 24 | MOTION for an Extension of Time to Respond to Amended Petition for Writ of Habeas Corpus filed by Patricia A. Coyne–Fague. **Responses due by 11/21/2022.** (Bush, Christopher) (Entered: 11/07/2022) |
| 11/09/2022 | | TEXT ORDER granting 24 MOTION for an Extension of Time to Respond to Amended Petition for Writ of Habeas Corpus up to and including 12/7/22. So Ordered by Chief Judge John J. McConnell, Jr. on 11/9/2022. (Jackson, Ryan) (Entered: 11/09/2022) |
| 12/06/2022 | 25 | MOTION to Dismiss *Amended Petition for Writ of Habeas Corpus* filed by Patricia A. Coyne–Fague. **Responses due by 12/20/2022.** (Attachments: # 1 Exhibit Docket: K1–2012–0341A, # 2 Exhibit State v. Gonzalez, 254 A.3d 813 (R.I. 2021))(Bush, Christopher) (Entered: 12/06/2022) |
| 12/13/2022 | | TEXT ORDER: Charles Tamuleviz, Esq. is hereby appointed pursuant to 18 USC 3006A(a)(2)(B) to represent Tony G. Gonzalez in connection with a Petition for a Writ of Habeas Corpus under 28 U.S.C. §2254. The Court finds that the petitioner is financially eligible for Court–appointed counsel and that the interests of justice require appointment of counsel in this matter. Appointed counsel shall file a response to the State's motion to dismiss by January 13, 2023. So Ordered by Chief Judge John J. McConnell, Jr. on 12/13/2022. (Simoncelli, Michael) (Entered: 12/13/2022) |
| 01/10/2023 | 26 | MOTION for an Extension of Time To Respond To Motion To Dismiss filed by Tony G. Gonzalez. **Responses due by 1/24/2023.** (Tamuleviz, Charles) (Entered: 01/10/2023) |
| 01/12/2023 | | TEXT ORDER granting 26 MOTION for an Extension of Time to Respond to 25 MOTION to Dismiss *Amended Petition for Writ of Habeas Corpus* up to and including 3/1/2023. So Ordered by Chief Judge John J. McConnell, Jr. on 1/12/2023. (Jackson, Ryan) (Entered: 01/12/2023) |
| 02/24/2023 | 27 | MOTION for an Extension of Time Extension Of Time To Respond To Motion To Dismiss filed by Tony G. Gonzalez. **Responses due by 3/10/2023.** (Tamuleviz, Charles) (Entered: 02/24/2023) |
| 02/27/2023 | | TEXT ORDER granting 27 MOTION for an Extension of Time to Respond to Motion to Dismiss up to and including 3/31/23. So Ordered by Chief Judge John J. McConnell, Jr. on 2/27/2023. (Jackson, Ryan) (Entered: 02/27/2023) |
| 03/28/2023 | 28 | MOTION for an Extension of Time to File Response/Reply *To Respondent's Motion To Dismiss* filed by Tony G. Gonzalez. **Responses due by 4/11/2023.** (Tamuleviz, Charles) (Entered: 03/28/2023) |
| 03/29/2023 | | TEXT ORDER granting 28 MOTION for an Extension of Time to File Response to 25 MOTION to Dismiss *Amended Petition for Writ of Habeas Corpus*; **Responses due by 4/30/2023**. So Ordered by Chief Judge John J. McConnell, Jr. on 3/29/2023. (Jackson, Ryan) (Entered: 03/29/2023) |
| 04/26/2023 | 29 | MOTION for an Extension of Time to File Response/Reply *To Motion To Dismiss* filed by Tony G. Gonzalez. **Responses due by 5/10/2023.** (Tamuleviz, Charles) (Entered: 04/26/2023) |
| 04/28/2023 | | TEXT ORDER granting 29 MOTION for an Extension of Time to File Response to 25 MOTION to Dismiss ; **Responses due by 5/15/2023.**. So Ordered by Chief Judge John J. McConnell, Jr. on 4/28/2023. (Jackson, Ryan) (Entered: 04/28/2023) |

| 05/12/2023 | 30 | RESPONSE In Opposition to 25 MOTION to Dismiss *Amended Petition for Writ of Habeas Corpus* filed by Tony G. Gonzalez. **Replies due by 5/19/2023.** (Tamuleviz, Charles) (Entered: 05/12/2023) |
| 05/19/2023 | 31 | MOTION for an Extension of Time to File Response/Reply filed by Patricia A. Coyne–Fague. **Responses due by 6/2/2023.** (Bush, Christopher) (Entered: 05/19/2023) |
| 05/22/2023 | | TEXT ORDER granting 31 MOTION for an Extension of Time to File Reply to 25 MOTION to Dismiss; **Replies due by 6/2/2023**. So Ordered by Chief Judge John J. McConnell, Jr. on 5/22/2023. (Jackson, Ryan) (Entered: 05/22/2023) |
| 06/02/2023 | 32 | REPLY to Response re 30 Response to Motion *to Dismiss Petition for Writ of Habeas Corpus* filed by Patricia A. Coyne–Fague. (Bush, Christopher) (Entered: 06/02/2023) |
| 07/11/2023 | 33 | ORDER granting 25 Motion to Dismiss and dismissing 22 AMENDED COMPLAINT against Patricia A. Coyne–Fague, filed by Tony G. Gonzalez. So Ordered by Chief Judge John J. McConnell, Jr. on 7/11/2023. (Jackson, Ryan) (Entered: 07/11/2023) |
| 07/26/2023 | 34 | MOTION for Certificate of Appealability filed by Tony G. Gonzalez. (Attachments: # 1 Letter to Clerk, # 2 Envelope)(Kenny, Meghan) (Entered: 07/26/2023) |
| 07/26/2023 | 35 | MOTION for Reconsideration re 33 Order on Motion to Dismiss filed by Tony G. Gonzalez. **Responses due by 8/9/2023.** (Attachments: # 1 Exhibit, # 2 Envelope)(Kenny, Meghan) (Entered: 07/26/2023) |
| 08/09/2023 | 36 | RESPONSE In Opposition to 35 MOTION for Reconsideration re 33 Order on Motion to Dismiss *Petition for Writ of Habeas Corpus* filed by Patricia A. Coyne–Fague. **Replies due by 8/16/2023.** (Bush, Christopher) (Entered: 08/09/2023) |
| 08/10/2023 | 37 | JUDGMENT in favor of Patricia A. Coyne–Fague against Tony G. Gonzalez. So Ordered by Deputy Clerk: Ryan H. Jackson on 8/10/2023. (Jackson, Ryan) (Entered: 08/10/2023) |
| 08/24/2023 | | TEXT ORDER: Mr. Gonzalez's Motion for Reconsideration 35 is DENIED. His Motion for a Certificate of Appealability is GRANTED to allow review of the issue surrounding the jury venire and alleged Brady violation. So Ordered by Chief Judge John J. McConnell, Jr. on 8/24/2023. (Jackson, Ryan) (Entered: 08/24/2023) |
| 10/04/2023 | 38 | NOTICE OF APPEAL by Tony G. Gonzalez as to 37 Judgment<br><br>**NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at  http://www.ca1.uscourts.gov/cmecf** Appeal Record due by 10/11/2023. (Attachments: # 1 Envelope)(Kenny, Meghan) (Entered: 10/04/2023) |
| 10/04/2023 | 39 | CLERK'S CERTIFICATE AND APPELLATE COVER SHEET: Abbreviated record on appeal consisting of notice of appeal, order(s) being appealed, and a certified copy of the district court docket report transmitted to the U.S. Court of Appeals for the First Circuit in accordance with 1st Cir. R. 11.0(b). 38 Notice of Appeal. Documents Sent: 37, 38, docket sheet. (Attachments: # 1 Record on Appeal)(Kenny, Meghan) (Entered: 10/04/2023) |
| 10/05/2023 | | USCA Case Number 23–1821 for 38 Notice of Appeal, filed by Tony G. Gonzalez. (Gonzalez Gomez, Viviana) (Entered: 10/05/2023) |
| 12/15/2023 | 40 | ORDER of the U.S. Court of Appeals for the First Circuit entered as to 38 Notice of Appeal. (Kenny, Meghan) (Entered: 12/18/2023) |

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| TONY GONZALEZ,<br>　　　Plaintiff, | )<br>)<br>)<br>) | |
| v. | )<br>) | C.A. No. 22-174-JJM-PAS |
| PATRICIA A. COYNE-FAGUE,<br>　　　Defendant. | )<br>)<br>)<br>) | |

## ORDER

Tony Gonzalez filed an Amended Complaint for habeas corpus, pursuant to 28 U.S.C. § 2254. ECF No. 22. Mr. Gonzalez asks to vacate his 2018 convictions for first-degree murder, assault with intent to commit a felony (murder), and firearms charges. He also seeks habeas relief based on the racial composition of the jury venire at his second trial, the State's alleged violation of his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and the trial court's denial of his two motions for a mistrial.[1] The State moves to dismiss Mr. Gonzalez's entire petition. ECF No. 25.

## I.    BACKGROUND

A Kent County grand jury indicted Mr. Gonzalez in 2012 for first degree murder, assault with intent to commit murder, and two firearms charges. The next year, a jury convicted Mr. Gonzalez on all counts. In 2016, however, the Rhode Island Supreme Court vacated these convictions, citing the trial court's error in admitting

---

[1] Mr. Gonzalez's Amended Complaint initially identified a fourth ground for habeas relief related to a motion to suppress evidence, but he has withdrawn this claim for procedural reasons, ECF No. 30 at 3, so the Court will not discuss it.

evidence that was seized as part of an illegal warrantless arrest. *State v. Gonzalez*, 136 A. 3d 1131 (R.I. 2016) ("*Gonzalez I*"). A second trial followed in 2017, and the jury convicted Mr. Gonzalez on all charges. The Rhode Island Supreme Court affirmed Mr. Gonzalez's convictions in July 2021. *State v. Gonzalez*, 254 A.3d 813 (R.I. 2021) *cert. denied*, 142 S. Ct. 1388 (2022) ("*Gonzalez II*").

Mr. Gonzalez filed this 28 U.S.C. § 2254 petition for habeas review. ECF No. 1. The State moved to dismiss the petition on all grounds, ECF No. 12, and the Court granted it. ECF No. 19.[2] Mr. Gonzalez moved to amend his petition, which the Court granted. ECF No. 21. It is this Amended Complaint, ECF No. 22, that the State again moves to dismiss. ECF No. 25.

## II.    STANDARD OF REVIEW

Federal habeas review of state court convictions and sentences is available only in a narrow set of circumstances. The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), requires that petitioners exhaust all available legal remedies at the state level, including by fairly presenting all claims for relief to state courts, before they file for federal judicial review on habeas grounds. Only when these conditions are met do federal courts reach the merits of habeas review.

---

[2] Mr. Gonzalez's Amended Petition is substantially similar, if not identical, to his previous petition. The Court's analysis here is therefore substantially similar to its analysis in its previous Order granting the State's Motion to Dismiss. ECF No. 19.

ADD. 19

When the Court does consider a case on the merits, its review is according to one of two standards depending on whether the state court reached a decision on the merits. If the state court ruled on the merits, then this Court may grant habeas relief only where the state court's decision was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *McCambridge v. Hall*, 303 F.3d 24, 34 (1st Cir. 2002) (citing 28 U.S.C. § 2254(b)(1)(A)).

A state court's decision is "contrary to" clearly established federal law if it applies a different test or rule of law than existing Supreme Court precedent or reaches a different conclusion based on materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). An "unreasonable application" of federal law occurs when a state court identifies the correct legal principle from existing Supreme Court precedent but applies it in an unreasonable manner to the facts of the case. *Id.* This standard is highly deferential to the state courts and does not permit the federal court to substitute its judgment for that of the state court. Even an incorrect application of existing federal law is not necessarily an unreasonable one. *Hensley v. Roden*, 755 F.3d 724, 731 (1st Cir. 2014). In order to constitute an unreasonable application of federal law, the state court's application must have been so patently mistaken as to go "beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015).

ADD. 20

If the state court did not reach the merits, by contrast, then this Court reviews the case de novo. *Norton v. Spencer*, 351 F.3d 1, 5 (1st Cir. 2003). Where there are any factual claims at issue, this Court defers to the state court as a general matter. To establish that the state court was in error, the petitioner bears the burden of "rebutting the presumption of [the state court's] correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III.     DISCUSSION

The Court now turns to the State's arguments in favor of dismissal on each of the three grounds Mr. Gonzales raises in his Amended Petition.

### A.     Jury Venire

Mr. Gonzalez alleges that the racial composition of the jury venire assembled for his trial violated his right to an impartial jury of his peers drawn from a fair cross-section of the community and, therefore, that the Rhode Island Supreme Court's decision upholding his conviction was an unreasonable application of federal law.

Upon its review of Mr. Gonzalez's allegations, the Court concludes that he fails to meet his burden to show that the state court's decision was "contrary to" clearly established federal law or constituted an "unreasonable application" of that law. In this case, the Rhode Island Supreme Court correctly identified the governing legal principle from current United States Supreme Court precedent and reasonably applied this precedent to the facts at issue. The Rhode Island Supreme Court noted that the United States Supreme Court required the defendant to first establish a prima facie case that their right to a jury venire drawn from a fair cross-section of the

4

community was violated. *Gonzalez II*, 254 A.3d 813, 819 (R.I. 2021) (citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). Mr. Gonzalez argues that the state court's interpretation of *Duren* was unreasonable because it "requires a prohibitively burdensome effort by defense counsel in any criminal case to address a potential issue which may or may not arise[.]" ECF No. 30 at 3. However, if Mr. Gonzalez believed the composition of his jury venire violated his rights, he should have raised it at the time of jury selection. As noted above, the AEDPA requires that petitioners exhaust all available legal remedies and raise all arguments for relief at the state level before they seek habeas review from federal courts. Since Mr. Gonzalez did not seek a continuance to build a factual record for a *Duren* challenge or argue in state court that this alleged violation entitled him to relief, this Court DENIES habeas review on this basis.

### B. *Brady* Violation

Next, Mr. Gonzalez alleges that the prosecutor improperly failed to provide him with a copy of the recording of a call from his brother that the prosecution used as evidence, thereby violating his rights under *Brady v. Maryland.* ECF No. 22 at 13-17. In response, the State argues that Mr. Gonzalez did not raise this issue during his state proceedings, and that under Rhode Island's "well-settled raise-or-waive" rule, he waived any grounds of relief that he failed to introduce during his trial. The State also moves to dismiss because the waiver due to his failure to raise falls under the independent and adequate state law or procedural default doctrine, which bars

ADD. 22

this court from reviewing the Rhode Island Supreme Court's decision. ECF No. 25 at 16-20.

An independent and adequate state law or procedural default "bar[s] federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Lynch v. Ficco*, 438 F.3d 35, 45 (1st Cir. 2006) (internal citation omitted). The only instances in which federal habeas review is not barred are when the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.*

In his response to the State's motion to dismiss, Mr. Gonzalez claims that the state court acted contrary to clearly established federal law by failing to consider "any recognized exception to the 'raise-or-waive' rule, e.g. cause and prejudice or miscarriage of justice." ECF No. 30 at 4. However, Mr. Gonzlez did not raise and litigate the argument that he qualified for an exception to the raise-or-waive rule in his state court proceeding. As such, he did not exhaust his state remedies on this possible ground for relief. Federal habeas review of the claim is therefore barred. As this Court previously ruled on the identical issue in Mr. Gonzalez's first petition because he failed to raise this issue with the state court, he cannot raise it before this Court for consideration in his habeas case. *See* ECF No. 19 at 8.

ADD. 23

## C.    Mistrial Motions

During Mr. Gonzalez's second trial, a witness twice referred to his first trial. Mr. Gonzalez moved on each occasion for a mistrial. The trial court denied these motions but issued curative instructions to the jury to disregard the witness's remarks. Mr. Gonzalez claims that the cumulative effect of the witness's comments, and the trial court's erroneous denials of two motions for mistrial, prejudiced the outcome of the trial. ECF No. 22 at 17-20. Mr. Gonzalez seeks habeas relief, alleging that the Rhode Island Supreme Court misapplied federal law by failing to consider the cumulative impact of the two statements taken together, as well as the circumstances surrounding them that exacerbated their prejudicial impact. Mr. Gonzalez argues that the Rhode Island Supreme Court's decision to uphold the convictions in spite of these errors constituted an unreasonable application of federal law and United States Supreme Court precedents. *Id.*

In order to constitute a basis for a mistrial, an error must have resulted in actual prejudice to the defendant's case. *United States v. Joyner*, 191 F.3d 47, 53 (1st Cir. 1999). A series of errors, no single one of which would have resulted in actual prejudice on its own, may constitute a basis for a mistrial if their cumulative effects result in prejudice. *United States v. Soto-Beniquez*, 356 F.3d 1, 43 (1st Cir. 2003). On the other hand, curative instructions given in a timely manner may be sufficient to remove the prejudicial effect of an error. *United States v. Padilla-Galarza*, 990 F.3d 60, 81–82 (1st Cir. 2021) (a timely curative instruction can "sap[] the force of anything that was said" even if the statement may have "placed [defendant] in an

7

ADD. 24

unflattering light"). Thus, absent evidence to the contrary, when a trial court issues a timely curative instruction, this Court presumes "that the jurors heeded it." *Id.*

Upon its review, the Court finds that the Rhode Island Supreme Court reasonably applied federal law in concluding that the trial court did not abuse its discretion in denying the motions for a mistrial grounded in the witness's reference to Mr. Gonzales' first trial. As the Rhode Island Supreme Court explained in its decision in *Gonzalez II*, the trial justice "was sensitive to any effect that Mr. Chivers's references [to the defendant's previous trial] may have had on the jury" and took steps to mitigate any potentially prejudicial impact of these remarks, including by issuing timely curative instructions, which were crafted to avoid drawing further attention to the defendant's first trial, and engaging in lengthy discussions with counsel prior to ruling on the motions. *Gonzalez II*, 254 A.3d at 820-21. There is nothing in the record to support a conclusion that the jury failed to heed the trial justice's timely curative instructions, so the Court finds that the Rhode Island Supreme Court reasonably concluded that the trial court's denial of the mistrial motions was not an abuse of discretion.

## IV.  CONCLUSION

Mr. Gonzalez's state court conviction was neither "contrary to" clearly established federal law, nor an "unreasonable application" of clearly established federal law on the facts of his case. The Court GRANTS the State's Motion to Dismiss, and dismisses Mr. Gonzalez's Petition for Habeas Relief. ECF No. 25.

ADD. 25

IT IS SO ORDERED.

_____

John J. McConnell, Jr.
Chief Judge
United States District Court

July 11, 2023

ADD. 26